# UNITED STATES *v.* MONTALVO-MURILLO

No. 89–163.   Argued January 9, 1990—Decided May 29, 1990

KENNEDY, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, BLACKMUN, O'CONNOR, and SCALIA, JJ., joined. STEVENS, J., filed a dissenting opinion, in which BRENNAN and MARSHALL, JJ., joined, *post*, p. 722.

*Deputy Solicitor General Bryson* argued the cause for the United States. With him on the briefs were *Solicitor General Starr, Assistant Attorney General Dennis*, and *Jeffrey P. Minear*.

*Bernard J. Panetta II* argued the cause and filed a brief for respondent.

JUSTICE KENNEDY delivered the opinion of the Court.

Both the District Court, 713 F. Supp. 1407 (NM 1989), and the Court of Appeals for the Tenth Circuit, 876 F. 2d. 826 (1989), found that one Montalvo-Murillo, a suspect held in pretrial custody on federal criminal charges, posed a risk of flight and a danger to the community. Because no condition of release could give reasonable assurances against these contingencies, detention was required by the Bail Reform Act of 1984, 18 U. S. C. § 3142(e). The District Court and Court of Appeals held, nevertheless, that Montalvo-Murillo must be released because there had been a failure to observe the Act's directions for a timely hearing. § 3142(f). To no one's great surprise, the suspect became a fugitive after his release and is still at large.

We granted certiorari, 493 U. S. 807 (1989), to resolve a split among the Courts of Appeals on whether failure to comply with the prompt hearing provision of the Act requires the release of a person who is a flight risk or a danger to other persons or the community.* We decide that the Act does not require release and so we reverse the Court of Appeals. Montalvo-Murillo, though now a fugitive, is the respondent here and is represented by appointed counsel. Respondent's flight does not render the case moot, for our resolution of the dispute determines the course of proceedings if and when he is rearrested on the charges now pending. Since we reverse, the Government may detain respondent at once upon

---

*Compare *United States* v. *Vargas,* 804 F. 2d 157, 162 (CA1 1986) (violation of the time limits specified in the Act does not prevent the Government from seeking pretrial detention at a subsequent detention hearing); *United States* v. *Clark,* 865 F. 2d 1433, 1436 (CA4 1989) (en banc); and *United States* v. *Hurtado,* 779 F. 2d 1467, 1481–1482 (CA11 1985) (en banc), with *United States* v. *Al-Azzawy,* 768 F. 2d 1141, 1145 (CA9 1985) (failure to observe the time limits precludes detention).

his rearrest without first seeking revocation of the existing release order. See 18 U. S. C. § 3148(b).

I

Two provisions of the Bail Reform Act of 1984 are relevant. The substantive provisions that allow detention are contained in subsection (e):

> "DETENTION. —If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, [he] shall order the detention of the person before trial. . . ." § 3142(e).

The controversy in this case centers around the procedures for a hearing, found in subsection (f):

> "DETENTION HEARING. —The judicial officer shall hold a hearing to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community—
>
> .        .        .        .        .
>
> "The hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance. Except for good cause, a continuance on motion of the person may not exceed five days, and a continuance on motion of the attorney for the Government may not exceed three days. During a continuance, such person shall be detained . . . . The person may be detained pending completion of the hearing. . . ." § 3142(f).

We review the sequence of events to put the statutory issue in proper context. On Wednesday, February 8, 1989, United States Customs Service agents stopped respondent at a New Mexico checkpoint near the international border.

The agents discovered approximately 72 pounds of cocaine hidden in respondent's truck. Admitting his plan to link with cocaine purchasers in Chicago, Illinois, respondent agreed to cooperate with the Drug Enforcement Administration (DEA) and to make a controlled delivery under Government surveillance. The DEA took respondent and his truck to Chicago in an attempt to complete the transaction, but the anticipated purchasers did not arrive at the delivery point.

The Government then arranged to transfer respondent back to New Mexico, where a criminal complaint had been filed charging him with possession of cocaine with intent to distribute, in violation of 21 U. S. C. § 841. Before his departure, respondent was brought before a Magistrate in the Northern District of Illinois for a transfer hearing pursuant to Federal Rule of Criminal Procedure 40. The hearing was held on Friday, February 10, two days after the initial arrest in New Mexico. Respondent was represented by counsel, and it appears that all parties and the Magistrate agreed that the detention hearing would be held in New Mexico, where the charges were pending. Respondent was returned to New Mexico that same evening.

The weekend intervened. On Monday, February 13, the DEA asked the United States Magistrate's office in New Mexico to schedule a detention hearing. A hearing was convened on Thursday, February 16, and respondent attended with retained counsel. Because the Pretrial Services Office had not yet prepared a report, the Magistrate, *sua sponte,* ordered a 3-day continuance, but, observing that the following Monday was a federal holiday, scheduled the hearing for Tuesday, February 21. The record shows no request for a waiver of the time limits, no advice to respondent of the right to a hearing within the time provided by the Act, no finding of good cause for continuance, and no objection to continuance by either party. The detention hearing was held as scheduled on February 21. The Magistrate, unconvinced that respondent was a flight risk or danger to other persons

or to the community, decided to order release of respondent upon the posting of a $50,000 bond and compliance with other conditions. The Government at once sought review in the District Court.

After holding a *de novo* detention hearing, on Thursday, February 23, the District Court agreed with the Government that no condition or combination of conditions reasonably would assure respondent's appearance or the safety of the community. Nevertheless, it ordered respondent's release. The court found that the detention hearing had not been held upon respondent's first appearance as specified by § 3142(f), and that pretrial release on conditions was the appropriate remedy for violation of the statutory requirement. The Court of Appeals affirmed. Upon issuance of its mandate, respondent was released and took flight.

Though the Government notes that the statutory phrase "first appearance" is by no means clear, either as an abstract matter or as applied in this case, it does not challenge the Court of Appeals' holding that respondent's detention hearing was held after that event and that continuances were beyond what the Act permits. We decide the case on those same assumptions, though without passing upon them. The sole question presented on certiorari is whether the Court of Appeals was correct in holding that respondent must be released as a remedy for the failure to hold a hearing at his first appearance.

II

In *United States* v. *Salerno*, 481 U. S. 739 (1987), we upheld the Bail Reform Act of 1984 against constitutional challenge. Though we did not refer in *Salerno* to the time limits for hearings as a feature which sustained the constitutionality of the Act, we recognize that a vital liberty interest is at stake. A prompt hearing is necessary, and the time limitations of the Act must be followed with care and precision. But the Act is silent on the issue of a remedy for violations of its time limits. Neither the timing requirements nor any

other part of the Act can be read to require, or even suggest, that a timing error must result in release of a person who should otherwise be detained.

The Act, as quoted above, requires pretrial detention of certain persons charged with federal crimes and directs a judicial officer to detain a person charged, pending trial, if the Government has made the necessary showing of dangerousness or risk of flight. 18 U. S. C. §§ 3142(e), (f). The Act authorizes detention "after a hearing [held] pursuant to the provisions of subsection (f) of this section." § 3142(e). Subsection (f) provides that "[t]he judicial officer shall hold a hearing" and sets forth the applicable procedures. Nothing in § 3142(f) indicates that compliance with the first appearance requirement is a precondition to holding the hearing or that failure to comply with the requirement renders such a hearing a nullity. It is conceivable that some combination of procedural irregularities could render a detention hearing so flawed that it would not constitute "a hearing pursuant to the provisions of subsection (f)" for purposes of § 3142(e). A failure to comply with the first appearance requirement, however, does not so subvert the procedural scheme of § 3142(f) as to invalidate the hearing. The contrary interpretation— that noncompliance with the time provisions in § 3142(f) requires the release even of a person who presumptively should be detained under § 3142(e)—would defeat the purpose of the Act.

We hold that a failure to comply with the first appearance requirement does not defeat the Government's authority to seek detention of the person charged. We reject the contention that if there has been a deviation from the time limits of the statute, the hearing necessarily is not one conducted "pursuant to the provisions of subsection (f)." There is no presumption or general rule that for every duty imposed upon the court or the Government and its prosecutors there must exist some corollary punitive sanction for departures or omissions, even if negligent. See *French* v. *Edwards*,

13 Wall. 506, 511 (1872) ("[M]any statutory requisitions intended for the guide of officers in the conduct of business devolved upon them . . . do not limit their power or render its exercise in disregard of the requisitions ineffectual"). In our view, construction of the Act must conform to the "'great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided.'" *Brock* v. *Pierce County*, 476 U. S. 253, 260 (1986) (quoting *United States* v. *Nashville, C. & St. L. R. Co.*, 118 U. S. 120, 125 (1886)).

In *Brock* v. *Pierce County, supra,* the Court addressed a statute that stated that the Secretary of Labor "shall" act within a certain time on information concerning misuse of federal funds. The respondent there argued that a failure to act within the specified time divested the Secretary of authority to act to investigate a claim. We read the statute to mean that the Secretary did not lose the power to recover misused funds after the expiration of the time period. Congress' mere use of the word "shall" was not enough to remove the Secretary's power to act. *Id.*, at 260 (footnote omitted) ("We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake. When, as here, there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that Congress intended the agency to lose its power to act").

In a similar manner, in this case the word "shall" in the Act's hearing time requirement does not operate to bar all authority to seek pretrial detention once the time limit has passed. Although the duty is mandatory, the sanction for breach is not loss of all later powers to act. The argument that failure to comply with the Act's time limits prohibits the Government from moving for detention proves too much. If any variation from the time limits of subsection (f) prevents a

detention hearing from being "a hearing pursuant to subsection (f)," then the same would have to be true of any deviation from the other procedures prescribed by § 3142(f). During the hearing, a person is entitled to be represented by counsel, present witnesses, testify on his own behalf, cross-examine Government witnesses, and present additional evidence. § 3142(f). If we suppose an error that infringes any of these rights in an insignificant way, we doubt that anyone would make the serious contention that a hearing, otherwise perfect, is not "a hearing pursuant to" the statute because such an error occurred. Nor should a hearing held after the person's first appearance prevent detention.

To avoid the logical implications of his argument with regard to procedural violations other than timeliness, respondent admits that other infringements could be subject to a harmless-error analysis. This position cannot be reconciled with respondent's contention that absolute compliance with the provisions of subsection (f) is mandated by subsection (e). If a failure to follow the provisions of subsection (f) with respect to timeliness means that a condition precedent for detention is lacking, then a failure to comply with the other provisions of subsection (f) would have the same effect. It is no answer to respond that a hearing that violates some of the procedural requirements of subsection (f) may still be "fair," while a hearing held after the person's first appearance cannot be "prompt." If there has been a failure to observe the time limits of the Act, it does not follow that there must be a presumption of prejudice, either as an empirical matter or based on our precedents. We need seek only a practical remedy, not one that strips the Government of all authority to act. *Bank of Nova Scotia* v. *United States*, 487 U. S. 250 (1988).

Our conclusion is consistent with the design and function of the statute. We have sustained the Bail Reform Act of 1984 as an appropriate regulatory device to assure the safety of persons in the community and to protect against the risk of

flight. We have upheld the substantive right to detain based upon the Government's meeting the burden required by the statute. *United States* v. *Salerno*, 481 U. S. 739 (1987). Automatic release contravenes the object of the statute: to provide fair bail procedures while protecting the safety of the public and assuring the appearance at trial of defendants found likely to flee. The end of exacting compliance with the letter of § 3142(f) cannot justify the means of exposing the public to an increased likelihood of violent crime by persons on bail, an evil the statute aims to prevent. See S. Rep. No. 98–225, p. 3 (1983) ("Federal bail laws must address the alarming problem of crimes committed by persons on release and must give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released"). The Government's interest in preventing these harms remains real and substantial even when the time limits have been ignored. The safety of society does not become forfeit to the accident of noncompliance with statutory time limits where the Government is ready and able to come forward with the requisite showing to meet the burden of proof required by the statute.

Assessing the situation in realistic and practical terms, it is inevitable that, despite the most diligent efforts of the Government and the courts, some errors in the application of the time requirements of § 3142(f) will occur. Detention proceedings take place during the disordered period following arrest. As this case well illustrates, circumstances such as the involvement of more than one district, doubts about whether the defendant was subject to temporary detention under § 3142(d), and ambiguity in requests for continuances may contribute to a missed deadline for which no real blame can be fixed. In these situations, there is no reason to bestow upon the defendant a windfall and to visit upon the Government and the citizens a severe penalty by mandating release of possibly dangerous defendants every time some deviation from the strictures of § 3142(f) occurs.

In the case before us, of course, it is not clear that the Government bears the responsibility for the delay, for the Magistrate continued the hearing *sua sponte* when the Government announced that it was ready to proceed. But even on the assumption that a violation of the Act occurred and that the Government should bear some of the responsibility for it, the Court of Appeals erred in holding that the Government is barred from proceeding under the Act.

We find nothing in the statute to justify denying the Government an opportunity to prove that the person is dangerous or a risk of flight once the statutory time for hearing has passed. We do not agree that we should, or can, invent a remedy to satisfy some perceived need to coerce the courts and the Government into complying with the statutory time limits. Magistrates and district judges can be presumed to insist upon compliance with the law without the threat that we must embarrass the system by releasing a suspect certain to flee from justice, as this one did in such a deft and prompt manner. The district court, the court of appeals, and this Court remain open to order immediate release of anyone detained in violation of the statute. Whatever other remedies may exist for detention without a timely hearing or for conduct that is aggravated or intentional, a matter not before us here, we hold that once the Government discovers that the time limits have expired, it may ask for a prompt detention hearing and make its case to detain based upon the requirements set forth in the statute.

An order of release in the face of the Government's ability to prove at once that detention is required by the law has neither causal nor proportional relation to any harm caused by the delay in holding the hearing. When a hearing is held, a defendant subject to detention already will have suffered whatever inconvenience and uncertainty a timely hearing would have spared him. Release would not restore these benefits to him. *United States* v. *Morrison*, 449 U. S. 361, 364 (1981) (remedies should be tailored to the injury suf-

fered). This case is similar to *New York* v. *Harris, ante,* p. 14, in which we held that an unlawful arrest does not require a release and rearrest to validate custody, where probable cause exists. In this case, a person does not become immune from detention because of a timing violation.

Our ruling is consistent also with *Bank of Nova Scotia* v. *United States,* 487 U. S., at 256, where we held that nonconstitutional error will be harmless unless the court concludes from the record as a whole that the error may have had a "substantial influence" on the outcome of the proceeding. In this case, it is clear that the noncompliance with the timing requirement had no substantial influence on the outcome of the proceeding. Because respondent was dangerous and likely to flee, he would have been detained if his hearing had been held upon his first appearance rather than a few days later. On these facts, the detention was harmless. See *ibid.; Morrison, supra,* at 364–367 (inappropriate to dismiss indictment because of Sixth Amendment violation that had no adverse impact on proceedings). This approach is consistent with the principle of harmless-error analysis that is the governing precept in most matters of criminal procedure. Fed. Rule Crim. Proc. 52. We have no need to consider in this case the remedies available to a person detained beyond the statutory limit and later found eligible for release. We hold that respondent was not, and is not, entitled to release as a sanction for the delay in the case before us.

The judgment of the Court of Appeals is

*Reversed.*

JUSTICE STEVENS, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

This case involves two lawbreakers. Respondent, as the Court repeatedly argues, *ante,* at 713, 716, 721, failed to appear after his release on bail, an apparent violation of 18 U. S. C. § 3146. Even before that, however, the Government imprisoned respondent without a timely hearing, a conceded

violation of § 3142.[1]  In its haste to ensure the detention of respondent, the Court readily excuses the Government's prior and proven violation of the law.  I cannot agree.

I

Before examining the consequences that follow from the Government's violation of § 3142, it is well to remember the magnitude of the injury that pretrial detention inflicts and the departure that it marks from ordinary forms of constitutional governance.  Executive power to detain an individual is the hallmark of the totalitarian state.  Under our Constitution the prohibition against excessive bail,[2] the Due Process Clause of the Fifth Amendment,[3] the presumption of innocence[4] —indeed, the fundamental separation of pow-

---

[1] Respondent's absence is irrelevant to the merits of the question upon which we granted certiorari.  Its only bearing on this case is that it counsels utmost caution in our consideration because the adversarial character of the litigation may have been compromised.  See *United States* v. *Sharpe*, 470 U. S. 675, 721 (1985) (STEVENS, J., dissenting).

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U. S. Const., Amdt. 8.

[3] We have recognized that delay of a hearing related to detention itself can violate constitutional guarantees of due process.  See *Gerstein* v. *Pugh*, 420 U. S. 103, 125–126 (1975) (state pretrial detention requires a "timely judicial determination" of probable cause before or promptly after arrest); cf. *Morrissey* v. *Brewer*, 408 U. S. 471, 485 (1972) (preliminary hearing is required "promptly after a parole violator's arrest); *id.,* at 488 (parole revocation hearing "must be tendered within a reasonable time after the parolee is taken into custody").

[4] "It is not a novel proposition that the Bail Clause plays a vital role in protecting the presumption of innocence.  Reviewing the application for bail pending appeal by members of the American Communist Party convicted under the Smith Act, 18 U. S. C. § 2385, Justice Jackson wrote:

'Grave public danger is said to result from what [the defendants] may be expected to do, in addition to what they have done since their conviction. If I assume that defendants are disposed to commit every opportune disloyal act helpful to Communist countries, it is still difficult to reconcile with traditional American law the jailing of persons by the courts because of anticipated but as yet uncommitted crimes.  Imprisonment to protect society from predicted but unconsummated offenses is . . . unprecedented in

ers among the Legislative, the Executive and the Judicial Branches of Government[5]—all militate against this abhorrent practice.   Our historical approach eschewing detention prior to trial reflects these concerns:

> "From the passage of the Judiciary Act of 1789, 1 Stat. 73, 91, to the present Federal Rules of Criminal Procedure, Rule 46(a)(1), federal law has unequivocally provided that a person arrested for a non-capital offense *shall* be admitted to bail.   This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction.   See *Hudson* v. *Parker*, 156 U. S. 277, 285 (1895).   Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning."   *Stack* v. *Boyle*, 342 U. S. 1, 4 (1951).

Sections 3142(e) and (f), allowing limited detention of arrestees, were enacted against this historical backdrop. Bail Reform Act of 1984, Pub. L. 98–473, 98 Stat. 1976, 18 U. S. C. §§ 3142(e), (f).   Congress carefully prescribed stringent procedures to govern this extraordinary departure from

---

this country and . . . fraught with danger of excesses and injustice. . . . ' *Williamson* v. *United States*, 95 L. Ed. 1379, 1382 (1950) (opinion in chambers) (footnote omitted)."   *United States* v. *Salerno*, 481 U. S. 739, 766 (1987) (MARSHALL, J., dissenting).

The Bail Reform Act of 1984 added 18 U. S. C. § 3142(j): "Nothing in this section shall be construed as modifying or limiting the presumption of innocence."

[5] In limiting the construction of 18 U. S. C. § 3147, which prescribes punishment for crimes committed by persons on pretrial release, we recognized that balancing among various policy objectives was the job of Congress:

"[N]o legislation pursues its purposes at all costs.   Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates the legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law."   *Rodriguez* v. *United States*, 480 U. S. 522, 525–526 (1987).

the guarantee of liberty normally accorded to presumptively innocent individuals.[6]    Accordingly, when this Court upheld the constitutionality of these provisions of the Bail Reform Act, it assumed that pretrial detention would be imposed only on those arrestees "found after an adversary hearing to pose a threat . . . which no condition of release can dispel. The numerous procedural safeguards detailed above must attend this adversary hearing."    *United States* v. *Salerno,* 481 U. S. 739, 755 (1987).[7]

Section 3142(e) permits pretrial detention only "[i]f, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of

_____

[6] Both Houses of Congress were aware of the necessity of procedural protections:

"[T]he Committee recognizes a pretrial detention statute may nonetheless be constitutionally defective if it fails to provide adequate procedural safeguards or if it does not limit pretrial detention to cases in which it is necessary to serve the societal interests it is designed to protect.    The pretrial detention provisions of this section have been carefully drafted with these concerns in mind."    S. Rep. No. 98–225, p. 8 (1983).

"Several of the states which have recently enacted pretrial detention statutes have also incorporated elaborate due process protections.    These procedures have been recommended by the American Bar Association, the Association of the Bar of the City of New York and the National Association of Pretrial Services Agencies."    H. R. Rep. No. 98–1121, p. 14 (1984) (footnote omitted) (citing Wis. Const., Art. I, § 8(3) (limiting any legislation allowing pretrial detention to a maximum of 10 days without a hearing and 60 days thereafter)).

[7] The unique dangers posed by any detention provision were more fully described by JUSTICE MARSHALL in his dissenting opinion in *Salerno:*

"This case brings before the Court for the first time a statute in which Congress declares that a person innocent of any crime may be jailed indefinitely, pending the trial of allegations which are legally presumed to be untrue, if the Government shows to the satisfaction of a judge that the accused is likely to commit crimes, unrelated to the pending charges, at any time in the future.    Such statutes, consistent with the usages of tyranny and the excesses of what bitter experience teaches us to call the police state, have long been thought incompatible with the fundamental human rights protected by our Constitution."    481 U. S., at 755.

the person as required and the safety of any other person and the community." Subsection (f) in turn sets forth specific deadlines, chosen "in light of the fact that the defendant will be detained during such a continuance," S. Rep. No. 98–225, p. 22 (1983), within which a detention hearing must be held:

"The hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance. Except for good cause, a continuance on motion of such person may not exceed five days, and a continuance on motion of the attorney for the Government may not exceed three days." § 3142(f)(2).

There was no such hearing—or finding of good cause for continuance—when respondent was arrested on February 8, 1989, when he first appeared before a Northern District of Illinois Magistrate on February 10, or when the New Mexico Magistrate convened the parties on February 16. No court considered the basis of detention until February 21, after respondent had been incarcerated for 13 days.[8]

Congress' specification of the timing of detention hearings defines one boundary of the courts' power to order pretrial detention. "Because detention may be ordered under section 3142(e) only after a detention hearing pursuant to subsection (f), the requisite circumstances for invoking a detention hearing in effect serve to limit the types of cases in which detention may be ordered prior to trial." S. Rep. No. 98–225, at 20. The clear terms of the statute demand strict adherence. See *Hallstrom* v. *Tillamook County*, 493 U. S. 20,

---

[8] Even the statutory provision applicable to arrestees who are aliens, pretrial releasees, or parolees allows detention only "for a period of not more than ten days" after proper judicial determination. 18 U. S. C. § 3142(d). The Senate recognized that "a deprivation of liberty of up to ten days is a serious matter," but allowed the longer period "to give the government time to contact the appropriate court, probation, or parole official, or immigration official and to provide the minimal time necessary for such official to take whatever action on the existing conditional release that official deems appropriate." S. Rep. No. 98–225, at 17.

25–31 (1989) (holding notice and 60-day delay requirements mandatory conditions precedent to commencing suit under 42 U. S. C. § 6972); cf. *Griggs* v. *Provident Consumer Discount Co.*, 459 U. S. 56 (1982) (Fed. Rule App. Proc. 4(a)(4) stating that a premature notice "shall have no effect" is mandatory and jurisdictional).[9]

A federal prosecutor should have no difficulty comprehending the unequivocal terms of § 3142(f)(2) and complying with its deadlines by proceeding or obtaining a proper continuance at the arrestee's first appearance. The rare failure to meet the requirements of subsection (f) will mean only that the Government forfeits the opportunity to seek pretrial detention in that case. Because the provisions of § 3142(f)(2) are a prerequisite only for hearings to consider this particular form of pretrial action, the prosecutor still may seek any conditions of release that are "reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community." § 3142(c)(1)(B)(xiv). The range of options—the sole safeguards that were available in cases prior to the creation of the special detention provisions in 1984—remain viable.

## II

The Court, however, concludes that no adverse consequences should flow from the prosecutor's violation of this plain statutory command. Treating the case as comparable to an agency's failure to audit promptly a grant recipient's

---

[9] It is unnecessary to determine whether the time provisions of § 3142 actually create a jurisdictional bar, see *Hallstrom*, 493 U. S., at 31, nor is the question of the effect of violations of other provisions of § 3142(f) before us. The Court itself recognizes the possibility that "some combination of procedural irregularities could render a detention hearing so flawed that it would not constitute 'a hearing pursuant to the provisions of subsection (f)' for purposes of § 3142(e)," although it fails to identify what standards it would design to replace those stated by Congress. *Ante*, at 717. See also *ante*, at 720 (suggesting that "accident[s] of noncompliance" and "errors" are excusable); *ante*, at 721 (suggesting that "other remedies may exist . . . for conduct that is aggravated or intentional").

use of federal funds, see *Brock* v. *Pierce County*, 476 U. S. 253 (1986), the Court concludes that there is no reason to penalize the public for a prosecutor's mistake. If a belated hearing eventually results in a determination that detention was justified, the error has been proved harmless. The Court apparently discards the possibility that the hearing might result in a determination that the arrestee is eligible for release—as the Magistrate so determined in this case—or that detention of any arrestee before establishing the legality of that intrusion on liberty could "affect substantial rights." 876 F. 2d 826, 829 (CA10 1989); Fed. Rule Crim. Proc. 52(a). A harmless-error analysis fails to appreciate the gravity of the deprivation of liberty that physical detention imposes and the reality that "[r]elief in this type of case must be speedy if it is to be effective." *Stack*, 342 U. S., at 4.

This casual treatment of official violations of law is disturbing in itself, but it is particularly troubling because it treats the pretrial detention statute as just another routine species of Government regulation of ordinary civilian affairs.[10] The Court asserts that the requirements of § 3142(f) are in the category of statutory requisitions that do not limit the power of Government officers. *Ante*, at 717–718 (citing *French* v. *Edwards*, 13 Wall. 506, 511 (1872)). But the *French* Court also identified, and in fact applied, the opposite characterization of the procedural requirements of the sheriff's sale there at issue. It held that laws "intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, . . . are not directory but mandatory," concluding that such requisitions "must be followed or the

---

[10] The Court seems satisfied to allow detention to continue without any hearing at all, unless the arrestee demands the proceeding that is the prosecutor's duty to instigate. The implication that an arrestee—who may well have just met temporary counsel at the first appearance—should be responsible for divining the Government's intent to move for detention and for initiating a timely hearing under § 3142(f) is absurd.

acts done will be *invalid*. The power of the officer in all such cases is limited by the manner and conditions prescribed for its exercise." *Id.*, at 511 (emphasis added). The grant of power that Congress gave courts to assess and enforce pretrial detention under §§ 3142(e) and (f) is also of a mandatory nature.[11]

As Congress recognized, the magnitude of the injury inflicted by pretrial detention requires adherence to strict procedural safeguards that cannot be sacrificed in the name of community safety. While the Court regards any arrestee as "a person who presumptively should be detained under § 3142(e)" and as "a suspect certain to flee from justice," *ante*, at 717, 721, I believe—and the Act reflects—that a new arrestee is initially presumed eligible for release no matter how guilty a prosecutor may believe him to be. Section 3142(e) recognizes that certain characteristics of the offense or arrestee may support a rebuttable presumption that no conditions of release exist, but such a presumption arises only "*if* such judicial officer *finds*" that those conditions do exist. (Emphasis added.) The magistrate's say-so cannot make his reasoning any less of a bootstrap. A late detention hearing does not become permissible on the basis of a presumption that cannot exist until after the hearing is held.

### III

Congress has written detailed legislation in a sensitive area that requires the Government to turn square corners. The Court today, however, permits federal prosecutors to violate

---

[11] The Court vigorously declines to "satisfy some perceived need to coerce the courts and the Government into complying with the statutory time limits," in the belief that compliance can be presumed "without the threat that we must embarrass the system by releasing a suspect certain to flee from justice." *Ante*, at 721. This analysis incorrectly assumes that the courts have discretion over such matters. *Congress* has "perceived" the need to ensure that detention hearings are held promptly and has shouldered the responsibility for any "embarrassment" by precisely defining the authority of courts to order pretrial detention.

the law with impunity. I agree with JUSTICE SCALIA's observation that strict compliance with such rules may appear to "frustrat[e] justice in the particular case," but

> "[w]ith technical rules, above all others, it is imperative that we adhere strictly to what we have stated the rules to be. A technical rule with equitable exceptions is no rule at all. Three strikes is out. The State broke the rules here, and must abide by the result." *Jones* v. *Thomas*, 491 U. S. 376, 396 (1989) (dissenting opinion).

I respectfully dissent.