## UNITED STATES

v.

**Freddy MARTINEZ, a.k.a. "Gallo" and Alejandro Brito, a.k.a. "Adancito"**

No. 00CR10172–NG.

United States District Court, D. Massachusetts.

June 21, 2000.

Sheila W. Sawyer, Assistant U.S. Attorney, United States Attorney's Office, Boston, MA, for Plaintiff United States.

Jeffrey Denner, Lane Altman & Owens, Boston, MA, for Defendant Brito.

John H. LaChance, Framingham, MA, for Defendant Martinez.

## ORDER ON DETENTION

ALEXANDER, United States Magistrate Judge.

The defendants, Freddy Martinez ("Martinez"), a.k.a "Gallo," and Alejandro Brito ("Brito"), a.k.a. "Adancito," appeared before this Court on May 31, 2000, and June 5, 2000, for a detention hearing pursuant to an indictment charging them with violations of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute cocaine). Assistant United States Attorney Sheila Sawyer appeared on behalf of the Government, and Attorneys John LaChance and Jeffrey Denner appeared on behalf of Martinez and Brito, respectively.

The Government moved for detention pursuant to 18 U.S.C. § 3142(f)(1)(b) (of-

fense for which maximum penalty is life imprisonment), (f)(1)(c) (violation of Controlled Substances Act), and (f)(2)(a) (risk of flight). In support of its motion, the Government proffered as evidence documents, photographs, and the credible testimony of John Grella, a Special Agent with the Drug Enforcement Administration, who participated in the investigation of this case. During his work on the case, Agent Grella took part in physical and electronic surveillance and searches of residences, interviewed witnesses and cooperating witnesses, reviewed reports of other agents who participated in the investigation, and reviewed documentary evidence related to the investigation.

Results of the investigation in Boston, which began around September 1998, show that Martinez and Brito, along with the other co-defendants in this case, are members of a widespread drug-trafficking and money-laundering organization based in Lynn, Massachusetts, but related to a larger crime network extending to New York, Florida, Illinois, and ultimately, the countries of Columbia and the Dominican Republic. Martinez is allegedly the head of this organization, the "kingpin," and Brito, a trusted high-level associate who held narcotics proceeds and brokered drug transactions for Martinez.

Government agents were aided in their investigation by at least two separate and independent cooperating witnesses, hereinafter referred to as "CW-1" and "CW-2." On February 7, 2000, agents monitored and recorded, with CW-1's consent, a telephone call CW-1 made to Martinez to discuss the possibility of Martinez purchasing forty kilograms (40 kg.) of cocaine from CW-1. The two met in person two days later to engage in further negotiations regarding the possible deal, and the meeting was recorded on audiotape and videotape by agents. On February 15, 2000, CW-1 called Martinez again regarding the negotiations but the conversation ended when Martinez informed him that he (Martinez) had a better supply source

who could sell him cocaine for a better price.

In contrast, CW-2, who does not know CW-1, began purchasing cocaine from Martinez in February 1999. For approximately one year, between February 1999 and February 2000, CW-2 stated that he purchased about one kilogram (1 kg.) of cocaine from Martinez every three weeks. CW-2 described a typical transaction: CW-2 would call Martinez on the latter's cellular telephone or page him on the latter's pager to make arrangements to purchase and pay for the cocaine, usually to meet at one of various locations in Lynn or Peabody, Massachusetts. CW-2 would enter Martinez's car whereupon Martinez would drive for a short distance before producing the cocaine from a concealed compartment in the car. Martinez would then drive CW-2 back to his car and the latter would pay for the drugs either upon delivery or within a week thereafter. In February and March 2000, government agents recorded and surveilled, with CW-2's consent, the latter's arrangements to meet and subsequent meetings, once with Martinez's girlfriend and once with Martinez, to pay money he owed for cocaine purchased previously from Martinez.

Government agents also intercepted numerous wire communications between Martinez and his associates or customers, engaging in conversations, albeit often cryptically, related to drug distribution. Between January 1, 2000, and April 18, 2000, approximately one hundred and twenty-three (123) cellular phone calls were intercepted between Martinez and Brito alone. On April 10, 2000, for example, agents intercepted a call from Martinez to Brito during which the two men discussed in cryptic terms "the guy" they would meet to pick up "the thing" in exchange for money—interpreted to refer to meeting with a potential source for drugs. Two days later, after Massachusetts State Police had raided the house belonging to an individual connected with Martinez's activities, Martinez was intercepted calling

an associate, a co-defendant here, advising him, "[Y]ou clean your house, let me clean mine." Martinez then called Brito, telling him that "things are hot now and I have to take some 'papers' out of here," and further told Brito to pick up the "papers." Martinez then called his girlfriend, who is a also co-defendant in this case, and instructed her to "take the money from the thing ... and give it to Alejandro." Later in the day, he called Brito again to confirm that the latter had received the item. On the following day, April 13, 2000, upon obtaining Brito's consent, government agents searched Brito's residence and seized $299, 890 in cash.

■ The Court must now determine whether there is a condition or combination of conditions that will adequately assure the defendants' appearance at future proceedings. Pursuant to the Bail Reform Act of 1984, this Court shall detain a criminal defendant pending trial upon a determination that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community ..." 18 U.S.C. § 3142(e). This determination is predicated upon the Government's ability to make a showing of "dangerousness or risk of flight." *United States v. Montalvo–Murillo*, 495 U.S. 711, 716–17, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990). Because of the interference of pretrial detention with the "importan[t] and fundamental ... right" of liberty, *United States v. Salerno*, 481 U.S. 739, 750, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), this Court will not make such a finding lightly.

■ Pursuant to 18 U.S.C. § 3142(e), a rebuttable presumption arises that no condition or combination of conditions will assure either the safety of the community or a defendant's future appearance if the Court has found probable cause to believe that the defendant committed an offense described in § 3142(f)(1). Section 3142(f)(1)(B) includes offenses for which a maximum term of life imprisonment is permitted, and § 3142(f)(1)(C) includes offenses for which a maximum term of ten years or more is prescribed in the Controlled Substances Act, 21 U.S.C. § 801 et seq. Here, both Martinez and Brito face a maximum sentence of life for allegedly conspiring with intent to possess cocaine and a maximum sentence of more than ten years for violation of the Controlled Substances Act, offenses for which they have been indicted. Because the indictment establishes probable cause to believe that the defendants committed the crimes charged for purposes of a § 3142(e) detention hearing, *see United States v. Vargas*, 804 F.2d 157, 163 (1st Cir.1986), the presumption arises and serves to shift the burden of production upon Martinez and Brito to introduce some evidence to the contrary in order to rebut the presumption, *see United States v. O'Brien*, 895 F.2d 810, 815 (1st Cir.1990); *United States v. DiGiacomo*, 746 F.Supp. 1176, 1181 (D.Mass.1990).

The Government argued for pretrial detention of Martinez and Brito on the basis that they pose a serious risk of flight pursuant to § 3142(f)(2)(A). The Bail Reform Act requires pretrial detention of certain persons charged with federal crimes and directs a judicial officer to detain a person charged, pending trial, if the Government has made the necessary showing of dangerousness or risk of flight. *See Montalvo–Murillo*, 495 U.S. at 716, 110 S.Ct. 2072; 18 U.S.C. § 3142(e). "With regard to risk of flight as a basis for detention, the Government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's appearance at future court proceedings." *DiGiacomo*, 746 F.Supp. at 1180–81. The burden of persuasion, therefore, remains with the Government on the question of flight risk. *See DiGiacomo*, 746 F.Supp. at 1181 (citing *United States v. Jessup*, 757 F.2d 378, 381–82 (1st Cir.1985)).

■ Whether any set of conditions will assure the defendants' appearance and the safety of the community must be deter-

mined in light of the factors enumerated in 18 U.S.C. § 3142(g) and the ability of the parties to meet their respective evidentiary burdens.

First, this Court considers the nature and circumstances of the offense charged. Section 3142(g)(1) specifically requires the Court to consider whether the crime charged is a narcotics offense. The defendants have been charged with conspiracy to distribute cocaine base and distribution of cocaine base. The language of the rebuttable presumption and of subsection (g)(1) clearly evinces Congress's intent to prevent a defendant in a narcotics case from fleeing. The legislative history indicates that Congress intended to use pretrial detention to address both the great risk that persons who commit drug offenses will flee before trial, and the tendency for pretrial recidivism by such defendants. *See* S.Rep. No. 225, 98th Cong.2d Sess. 20 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3203.

Second, the Court considers the weight of the evidence against the defendants. The charge against Martinez and Brito is the result of an extensive investigation conducted with the use of cooperating witnesses, physical and electronic surveillance and wiretaps; evidence seized during searches of the defendants' respective residences include substantial amounts of cash, a quantity of cocaine, and drug paraphernalia. In light of the considerable quantity of evidence in its various forms, this Court finds that the Government's case against the defendants is very strong.

Third, the history and characteristics of each defendant must be considered. Martinez, 37 years old, was born in the Dominican Republic but entered the United States in 1981 and is now a permanent resident. For the past year, he has lived at an address in Brookline, Massachusetts,[1] with his girlfriend, a co-defendant in the case, and their one-year old son. He has reportedly lived in the Salem or North Shore area since entering this country in 1981. His mother lives in the Lynn area and five of his eight siblings live either in Massachusetts or New York; his father and remaining three siblings reside in Puerto Rico. He has a prior criminal record stretching back to 1983, listing numerous offenses with which he has been charged, including assault and battery, possession of narcotics with intent to distribute, and firearms violations. Significantly, while Martinez professed to qualify for appointment of counsel and completed a financial affidavit to that end, the information he provided under oath has subsequently proved false. He alleged that he worked for his cousin at Continental Communication in Lynn but when contacted to verify this information, the cousin denied Martinez had ever worked for him or that he even frequented the store. Moreover, despite reporting no financial assets, approximately $13,000 in cash was seized from his residence. Finally, during the course of their investigation, Government agents discovered that Martinez is in the process of building a large home in the Dominican Republic, with fountains and waterfalls, and estimated worth of half a millions dollars (in U.S. currency). Hence, the Court finds that not only has Martinez demonstrated a consistent disregard for the law in his numerous run-ins with law enforcement and for the obligation to tell the truth in his false statements under oath to this Court, he has ample financial means to flee if he were to so choose.

Brito was also born in the Dominican Republic. INS records indicate that he first entered this country in 1990. Although he has a work visa, which will expire on July 13, 2000 and will not be renewed until a disposition in this case is reached, he is currently here in the coun-

---

1. This Court notes that photographs submitted by the Government as evidence show Martinez's residence to be spacious and well-furnished, including an entertainment system with a high-definition, large screen television complete with a surround-sound system. Govt.'s Exhibits 6–8.

try illegally; a conviction in this case, therefore, would subject him to deportation proceedings. His wife of four years and their two children reside with him in Revere. Both of his parents and eight siblings reside in Dominican Republic. Since his entrance to the United States, his only employment has been with an automobile shop in Lynn, where has been working for the last five years. Although he owns a home in Revere, it is unclear whether it may be subject to forfeiture as a result of these criminal proceedings. He has no prior criminal record. Thus, as of mid-July this year, Brito will no longer be authorized to work in this country, his house here stands in danger of forfeiture, and he himself potentially faces deportation—factors together which constitute a strong incentive to flee.

Finally, this Court ponders the nature and seriousness of the danger to any person or the community that would be posed by the defendants' release. Martinez and Brito allegedly conspired with intent to possess cocaine. The crimes for which they have been charged constitute the type of offenses considered serious and dangerous under § 3142. *See* S.Rep. No. 225, *supra,* at 20, *reprinted in* 1984 U.S.C.C.A.N. at 3202–03. Congress has made clear that "the risk that a defendant will continue to engage in drug trafficking constitutes" a danger to other persons and to the community. *Id.* at 13, *reprinted in* 1984 U.S.C.C.A.N. at 3196. Acknowledging the concern that persons charged with major drug felonies "pose a significant risk of pretrial recidivism," *id.* at 20, *reprinted in* 1984 U.S.C.C.A.N. 3203, this Court finds that the Government has shown they pose a danger to the community in light of evidence showing them to have engaged extensively in the distribution of narcotics. In addition, Martinez has a prior criminal record, showing multiple violent offenses and possessions of firearms, demonstrating the risk of danger Congress contemplated.

Therefore, the Court thus finds by clear and convincing evidence that there are no conditions of release which could assure the safety of the community. Concomitantly, the Court finds by a preponderance of the evidence that Martinez and Brito each pose a serious risk of flight.

Based on these findings and the factors outlined above, this Court ORDERS that the defendants FREDDY MARTINEZ and ALEJANDRO BRITO be detained pending trial.

Further, pursuant to 18 U.S.C. § 3142(i) it is ORDERED that:

1. The Defendants be, and hereby are, committed to the Custody of the Attorney General for confinement in a corrections facility, separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. The Defendants be afforded reasonable opportunity for private consultation with their respective counselors; and

3. On Order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which the Defendants are confined shall deliver the Defendants to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

Review of this Detention Order may be obtained by Defendants' filing of a motion for revocation or amendment of the Order pursuant to 18 U.S.C. § 3145(b).

SO ORDERED.