[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12346
Non-Argument Calendar

_____

D.C. Docket No. 0:18-cr-60009-WPD-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN EDWARD BRADHAM,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 6, 2019)

Before ED CARNES, Chief Judge, WILLIAM PRYOR, and GRANT, Circuit
Judges.

PER CURIAM:

John Edward Bradham appeals his convictions for distributing cocaine base and possessing a gun and ammunition as a felon.  He contends that the district court should have excluded from evidence a video recording depicting a confidential informant who was never called to testify at trial because the admission of the recording violated the Confrontation Clause of the Sixth Amendment and because the recording was not properly authenticated.

I.

A federal grand jury indicted Bradham for one count of distributing cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(e), and one count of being a convicted felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1), 924(e).  The case proceeded to a jury trial.

At trial officer Carlton Smith testified that he and another police officer, Steven Smith, met with a confidential informant.[1]  Carlton testified that the informant had recorded cell phone conversations with Bradham in which they discussed setting up a sale for crack cocaine and a gun.  The government played an audio recording of a phone conversation in which the informant asked Bradham if he had any "hard" and whether he could "hook [him] up . . . with a fat one."  It also played an audio recording in which Bradham says he would be near Sixth Street Park and that, "I got seven bullets in it, dog.  But I'll let you go for four hundred."

---

[1] We will refer to the officers by their first names to avoid confusion.

Carlton testified that he, Steven, and the informant arranged to meet Bradham for the sale.  The officers gave the informant a covert recording device and a backpack containing $400 to buy the gun and $60 to buy the cocaine.  The informant then set up the sale in a recorded call with Bradham.  Carlton testified that he could tell it was Bradham's voice on the recorded phone call because he had spoken with Bradham and knew what his voice sounded like.

Carlton testified that the officers then dropped off the informant, who got on a bus.  The informant got off the bus and walked to a different bus stop across the street.  Bradham met the informant at the bus stop.  After their transaction the officers picked up the informant.  At that point the backpack contained a rock of crack cocaine and a firearm with ammunition.  Carlton testified that he did not have a clear view of the meeting and could see only outlines of two people sitting on the bus stop bench.

Carlton testified that the audio and video recording from the informant's covert device was downloaded onto a DVD following the meeting.  He testified that there was nothing on the recording device before he gave it to the informant and that he and Steven had searched the informant prior to the meeting with Bradham to make sure nothing was on his person other than the backpack and recording device.  The government then moved to introduce the recording, and

3

Bradham objected on hearsay and Confrontation Clause grounds.  The district court sustained the objection.

Carlton further testified that a SWAT team arrested Bradham at the bus stop. Carlton met him there and discovered a backpack on him that contained the $400 that the informant had been given to buy the gun.  Carlton said that during the transaction he was listening through an open line.  He said the voices were muffled by noise from cars, but that he heard a gun being racked several times and "bits and pieces" of conversation including Bradham explaining how to oil the gun.

The government then attempted to introduce the recording again, but the district court sustained Bradham's objection.  Carlton testified that what he heard when reviewing the recording was consistent with some of the things he heard while listening over the open line during the transaction.

The government then called detective John Loges.  Loges identified Bradham in court.  He testified that during the transaction he was positioned "right across the street" and saw Bradham approach the informant, but could not hear what was being said.  He testified that he could clearly see what was happening and that Bradham had a backpack in his hand when he crossed the street to meet the informant.  He saw Bradham reach into the backpack and show something to the informant.  Loges had "more of a side view" of Bradham "manipulating something in his hands" and "maneuvering with something."  Loges could see the

4

covert recording device in the informant's hand.  Loges watched the informant get up and walk away from the bus stop.

Loges testified that he had reviewed the recording.  The video was consistent with what he saw, but he "was looking at an angle where the camera view is basically straight on." Loges explained that the video was recorded by the informant, whereas he saw the interaction from the side.  The government moved to admit the recording.  Bradham objected that Loges was too far away to hear what was being said, that there was a lack of foundation, that the recording was hearsay, and that there had not been an opportunity to cross-examine the informant.  The district court overruled the objections and admitted the recording into evidence.

The recording is about two minutes long and shows the latter portion of the meeting with Bradham from the informant's point of view.  Bradham can be seen racking a handgun and heard telling the informant that he can keep the gun clean by wiping it down with baby oil. The informant can be heard making the following statements:  "My problem's over"; "No sit right here, oh OK"; "Ooh nice"; "Oh my god"; "Ain't no bullets in there, right, take it out, take it out"; "That's good, that's good.  I don't want to accidentally fire so leave the clip out"; "I don't want to shoot myself"; "So we done dealing, right"; "All right.  I'm heading home to some friends.  All right.  I'll let you know who my first victim is"; "Yeah, yeah,

appreciate it"; "Baby oil, just rag it"; "Appreciate it.  I got you.  OK.  All right, all right.  OK.  OK I hear you.  OK cool"; "Done deal.  I'm walking south on 27th."

The informant never testified.  The jury returned a guilty verdict on both counts.  The district court rejected Bradham's motion for a new trial, stating that "the authenticated evidence was sufficient to support a finding that proper foundation had been shown" and that "[t]he circumstantial evidence was overwhelming."  The court sentenced Bradham to 262 months imprisonment.  This is his appeal.

## II.

Bradham contends that his Sixth Amendment right to confront the informant was violated by admitting the recording into evidence without giving him the opportunity to cross-examine him.

"A defendant's claim that his Sixth Amendment rights were violated is reviewed de novo."  United States v. Ignasiak, 667 F.3d 1217, 1227 (11th Cir. 2012).  "[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt."  Delaware v. Van Arsdall, 475 U.S. 673, 681, 106 S. Ct. 1431, 1436 (1986).  "[T]he denial of the opportunity to cross-examine an adverse witness does not fit within the limited category of constitutional errors that are deemed prejudicial in every case."  Id. at 682, 106 S.

Ct. at 1437. Whether such a denial is harmless depends on a "host of factors" including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Id. at 684, 106 S. Ct. at 1438.

Even if we assume that admitting the recording into evidence violated the Confrontation Clause, any error was harmless beyond a reasonable doubt because the contents of the recording were cumulative of the other "overwhelming" circumstantial evidence that the government presented at trial. This evidence included audio recordings of cell phone conversations — the admissibility of which has not been challenged on appeal — where the informant arranged to buy crack cocaine from Bradham; Carlton's testimony that the informant's cash was found in Bradham's backpack and a gun and cocaine were found in the informant's backpack after the transaction; and Loges' testimony that he saw Bradham and the informant clearly from across the street. Much of the evidence included in the recording was also cumulative. Carlton testified that he heard Bradham racking the gun and describing how to oil it contemporaneously over the open line. So looking at the "whole record" we can confidently say that any constitutional error was harmless beyond a reasonable doubt. Id. at 681, 106 S. Ct. at 1436.

7

III.

Bradham also contends that the district court erred in admitting the video because the government did not properly authenticate it.

"[A] nonconstitutional error will be harmless unless the court concludes from the record as a whole that the error may have had a 'substantial influence' on the outcome of the proceeding." United States v. Montalvo-Murillo, 495 U.S. 711, 722, 110 S. Ct. 2072, 2080 (1990).  Because of the overwhelming circumstantial evidence the government produced, admitting the recording did not have a "substantial influence" on the outcome of Bradham's trial.

**AFFIRMED.**