*Hiya v. United States*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of April, two thousand twenty-six.

PRESENT:
>RICHARD J. SULLIVAN,
>BETH ROBINSON,
>>*Circuit Judges.*
>JED S. RAKOFF,
>>*District Judge.*[*]

_____

ERAN HIYA,

>*Petitioner-Appellant,*

>v.                                                   No. 26-267

_____

[*] Judge Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

_____

For Petitioner-Appellant:        JUSTINE A. HARRIS, Harris Trzaskoma LLP, New York, NY.

For Respondent-Appellee:        DANA R. MCCANN, Assistant United States Attorney, *for* Jay Clayton, United States Attorney for the Southern District of New York, New York, NY.

Appeal from an order of the United States District Court for the Southern District of New York (Jeannette A. Vargas, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the January 22, 2026 order of the district court is **AFFIRMED**.

Eran Hiya appeals from the district court's order denying his motion for bail pending extradition. Hiya faces charges in Israel, where allegedly – as head of a criminal syndicate called the "Hiya [G]ang," App'x at 569 – he conspired to assassinate a rival gang leader. After a magistrate judge certified him for extradition, Hiya (i) filed a still-pending habeas action challenging that certification, and (ii) sought bail in the interim, which the district court denied after

2

concluding that Hiya both posed a flight risk and a danger to the community.  We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

When reviewing a "detention challenge, we examine the district court's factual determinations for clear error," *United States v. Abuhamra*, 389 F.3d 309, 317 (2d Cir. 2004), and will affirm unless we are "left with the definite and firm conviction that a mistake has been committed," *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (internal quotation marks omitted).  Furthermore, district courts apply "a more demanding standard" "for persons involved in extradition proceedings . . . [than] for ordinary accused criminals awaiting trial," since granting bail in extradition cases risks frustrating "the treaty obligations of the United States." *Hu Yau-Leung v. Soscia*, 649 F.2d 914, 920; *see Wright v. Henkel*, 190 U.S. 40, 62 (1903) ("The demanding government . . . is entitled to the delivery of the accused[,] . . . and the [responding] government is under obligation to make the surrender[,] an obligation [that] it might be impossible to fulfil if release on bail were permitted.").  We have therefore recognized "a presumption against bail in [extradition cases]," *Hu Yau-Leung*, 649 F.2d at 920, with release warranted "only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory,"

3

*United States v. Leitner*, 784 F.2d 159, 160 (2d Cir. 1986) (internal quotation marks

omitted).

Because "there [is] no statute providing for . . . bail in cases of foreign

extradition," we have developed common-law standards governing such requests.

*Wright*, 190 U.S. at 62. Under those standards, a petitioner seeking bail must

(i) show "special circumstances" justifying relief, *id.* at 63; and (ii) satisfy – at the

very least – the traditional criteria for bail, *i.e.*, that he does not pose a risk of flight

or a danger to the community, *cf. Leitner*, 784 F.2d at 160–61 (explaining that "the

[alleged] violent" crimes and "risk of flight warrant[ed] the denial of bail" pending

extradition).[1]

Here, the district court did not clearly err in concluding that Hiya posed a

flight risk. It explained that Hiya (i) "ha[d] every incentive to flee," because he

faced over a decade in prison on a litany of Israeli charges alleging that he had

attempted to bomb a rival gang leader's car; (ii) "ha[d] the resources to flee"; and

(iii) "lack[ed] strong ties to this community" because his "wife and children d[id]

---

[1] The government also contends that (i) the foreign-fugitives statute, 18 U.S.C. § 3184, prohibits bail after the district court has certified a party for extradition, *but see Hu Yau-Leung*, 649 F.2d at 915–20 (affirming post-certification grant of bail); and (ii) the "difficult standards for release that apply in habeas proceedings" govern Hiya's bail request, Gov't. Br. at 17 (internal quotation marks omitted). We need not reach either issue because we conclude that the district court's analysis passes the ordinary test for bail pending extradition.

4

not live in the United States," and he generally "resid[ed] in a Turkish compound with private security." App'x at 503–04. The district court also emphasized that Hiya "is alleged to be the head of a criminal . . . syndicate," "may well have access to illicit assets, as well as the knowledge of how to obtain falsified travel documents," and was indicted in the United States on charges of "unlawfully apply[ing] for and procur[ing] U.S. citizenship" by falsifying records and affidavits. *Id.* at 505. Finally, the district court stressed that, at the time of his arrest, Hiya had passports and identification documents from several other countries, including from Poland and Turkey, which further reflected his ability to flee.

Hiya nonetheless argues that the district court erred by refusing – out of an excessive concern for "international comity" – to "evaluate the weight of the evidence" before the Israeli court. Hiya Br. at 12–13 (internal quotation marks omitted). Notwithstanding his concession that 18 U.S.C. § 3142(g) – the criminal bail statute – "does not technically govern extradition proceedings," he maintains that constitutional due process "mandate[s]" that courts go through all of section 3142(g)'s factors (including the weight of the evidence) when reviewing requests for bail pending extradition. *Id.* at 13–14 (citing *United States v. Salerno*, 481 U.S.

5

739, 755 (1987)). But we need not address that argument because the district court relied on a wide range of garden-variety factors to determine that Hiya posed a risk of flight. Consequently, even if it could be argued that the district court erred when it declined to consider the weight of the evidence before the Israeli court – a question we do not reach – any error was harmless. *See United States v. Montalvo-Murillo*, 495 U.S. 711, 722 (1990) (a nonconstitutional error is harmless "unless the court concludes from the record as a whole that the error may have had a substantial influence on the outcome of the proceeding" (internal quotation marks omitted)).

Hiya also asserts that the district court overlooked a "condition[] . . . that could reasonably assure" that he would not flee, *i.e.*, the "use of a private security firm." Hiya Br. at 2. But Hiya concedes that we have *forbidden* courts to consider exactly that condition, which would create "a two-tiered bail system in which defendants of lesser means are detained pending trial while wealthy defendants are released to self-funded private jails." *Id.* at 20 (quoting *United States v. Boustani*, 932 F.3d 79, 82 (2d Cir. 2019)). Hiya contends that this rule does not apply "where the defendant is deemed to be a flight risk primarily *because* of his wealth." *Id.* (quoting *Boustani*, 932 F.3d at 82). The district court here, however, expressly

6

considered this exception and held that it did not apply because Hiya's "personal wealth would not have altered [its] decision," and was thus neither "a but-for cause of [its] decision" nor a factor on which it "rel[ied] heavily." App'x at 549.

Having carefully reviewed the record below, we find that the district court correctly characterized its own conclusions: as discussed above, it considered the nature of Hiya's alleged crimes, his weak ties to the United States, his passport-fraud-related indictment, and several other factors. It is thus "clear that the [d]istrict [c]ourt did not rely primarily on [Hiya's] personal wealth in finding that he posed a flight risk" – even if that "wealth was one of many factors [it] considered." *Boustani*, 932 F.3d at 83.

\* \* \*

We have considered Hiya's remaining arguments and find them to be without merit. For these reasons, we **AFFIRM** the order of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

7