**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 12, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

DESMOND DION TURNER,

     Defendant - Appellant.

No. 07-5143
(N.D. Okla.)
(D.C. No. 07-CR-47-HDC-1)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **HOLLOWAY**, and **O'BRIEN**, Circuit Judges.

Desmond Dion Turner appeals from his convictions for possession with intent to

distribute cocaine base (crack), cocaine, and marijuana and use and carrying of a firearm

during and in relation to a drug trafficking crime.  He was convicted by a jury.  He voices

no complaints about the trial or the adequacy of his retained attorney.  Instead he

complains that possible pretrial irregularities coupled with an inadequate record from

which to appeal compel reversal.  Most of his concerns are

---

[*]  This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A).  Citation to unpublished decisions is not prohibited.  Fed. R. App. 32.1.
It is appropriate as it relates to law of the case, issue preclusion and claim preclusion.
Unpublished decisions may also be cited for their persuasive value.  10th Cir. R. 32.1(A).
Citation to an order and judgment must be accompanied by an appropriate parenthetical
notation – (unpublished).  *Id*.

imagined and were not properly preserved (none were called to the attention of the district judge). As to the remainder, if error occurred it was harmless. We affirm.

## I. BACKGROUND

In late January 2007, Turner was arrested after police arranged a controlled buy in an Oklahoma hotel room. An indictment charged Turner with possession with intent to distribute crack, cocaine and marijuana and use and carrying of a firearm during and in relation to a drug trafficking crime. He had six pretrial proceedings.[1]

Turner first appeared before a magistrate judge on March 26, 2007.[2] Represented by an Assistant Federal Public Defender, he acknowledged having read and understood the indictment. Turner stated he was attempting to retain counsel. The magistrate judge granted a continuance so Turner could make these arrangements. Arraignment was set for March 28, 2007. The government filed a motion for pretrial detention and requested a detention hearing.[3] The magistrate judge scheduled the detention hearing for March 28,

---

[1] Turner raises the adequacy of the original hearing transcripts as an issue on appeal. Some of the original transcripts were obviously incomplete. We granted the government's motion to supplement the record with amended transcripts. The statement of facts is taken, in part, from those amended transcripts.

[2] The original March 26 transcript contains one page of dialogue and includes a limited discussion of unidentified waiver forms. It appears to begin mid-hearing and identifies a different Assistant United States Attorney. The supplemental transcript makes no mention of waiver forms and does not include any dialogue shown in the original transcript. The original transcript was at least inaccurate and may have involved a different proceeding entirely. **[Vol. I, Docket Sheet at 3; Vol. VI; Supp. Vol. I]**

[3] Because of the crimes for which Turner was indicted, he was presumed to be ineligible for pretrial release but could rebut this presumption. *See* 18 U.S.C. §§ 924(c) (using or carrying a firearm during and in relation to a drug trafficking crime); 3142(e)(3)(A) (a controlled substance offense that was subject to a maximum term of

2007.

Turner next appeared before the magistrate judge on March 28, 2007, again represented by an Assistant Federal Public Defender. He informed the magistrate judge he was still attempting to retain an attorney who was out of town for personal reasons. The magistrate judge again continued the matter to allow Turner the opportunity to consult with counsel.

On April 3, 2007, Turner and his retained attorney appeared before the magistrate. Turner pled not guilty and again stated he had read and understood the indictment. The magistrate judge asked Turner's lawyer how he wished to proceed on the government's detention motion. Counsel stated he needed time to prepare. The magistrate judge honored the request for additional time and set a date agreeable to Turner's counsel.

On April 5, 2007, Turner and his counsel appeared for the detention hearing.[4] The government called one witness who testified regarding the circumstances surrounding Turner's arrest. Turner called his former employer who testified he would rehire Turner if he was released. The magistrate judge sustained the government's motion for detention. Although the magistrate judge issued no written findings or a statement of reasons, he made oral findings in support of his decision which noted: Turner's past departure from the jurisdiction before fulfilling his supervised release conditions, his

imprisonment of ten years or more).

[4] The original April 5 transcript is less than one page long. It includes only the ultimate disposition of the government's motion. The district court docket sheet contains an entry recording only the minutes of the hearing and a notation that the magistrate judge ordered Turner's continued incarceration prior to trial.

attempted flight from the police and failure to show his hands while possessing a loaded weapon when arrested on the current charges, his past drug use, the fact his current offense was a crime of violence and his limited history, family ties and employment record in the community. No request for written findings or a written statement of reasons was made, nor did Turner seek review of the detention order by the district court. *See* 18 U.S.C. § 3145(b).

On May 22, 2007, Turner and his attorney appeared for a pretrial conference. His attorney stated the government had provided a written plea agreement that appeared to be acceptable but he had not had time to review it with Turner in detail. However, he represented he was authorized to inform the court that a trial would not be needed. The magistrate judge scheduled a change of plea hearing but stated if there was no plea Turner would be expected to go to trial as scheduled.

On May 30, 2007 - three business days before trial was to begin - Turner appeared with his attorney. Defense counsel informed the magistrate judge Turner would not be pleading guilty and wanted to proceed to trial with a new attorney.[5] The attorneys and the magistrate judge discussed plea negotiations and Turner's rejection of the government's proposed plea bargain, the time needed for a trial, and Turner's request for a different attorney. When the magistrate judge asked why he wanted new counsel, Turner responded:

---

[5] The original May 30 transcript is less than two pages long. It includes the dialogue referencing Turner's request for substitution of counsel and references previous untranscribed dialogue between the magistrate judge and the attorneys about the time needed for a trial.

Well, we did talk, like, last week when I came to court about the plea and everything but everything still wasn't explained to me, the guidelines weren't gone over with me. I mean, I still wasn't sure about what I wanted to do. I didn't get a visit from my lawyer until Tuesday which I thought was my court date.

So it was, like --- I just feel like he's not really working for me and I feel like --- I mean, I feel like we've lost already. He's not really --- I don't feel like he's fighting for me at all. So, therefore, I don't think it would be right to represent me as my lawyer.

(R. Supp. Vol. II at 6.) The magistrate judge told Turner that he had time to speak with his attorney before trial was set to begin and directed him to explain his concerns in writing to the district court judge who would preside at the trial. Implicitly, the magistrate judge denied the request to substitute counsel.

Turner appeared with his attorney for trial on June 4, 2007. Defense counsel stated the defense was ready. Neither defense counsel nor Turner raised an objection about the pretrial proceedings and Turner did not renew his request for appointment of new counsel. After a two-day trial, the jury found Turner guilty. Turner was sentenced to seventy-eight months imprisonment. He raises no complaint about his trial or sentencing.

Rather, Turner's appellate arguments involve two concerns: the transcription accuracy of the pretrial proceedings and the adequacy of those proceedings. He distills these concerns to six issues: (1) the district court's failure to preserve a record adequate to afford a meaningful appeal; (2) a violation of the Court Reporter's Act through failure to accurately transcribe proceedings; (3) procedural errors by the magistrate judge during Turner's arraignment and initial appearance; (4) the magistrate's failure to issue written

findings or a statement of reasons when granting the government's motion for pretrial detention; (5) the magistrate's failure to properly consider his desire to substitute counsel; and (6) to the extent each of these alleged errors are harmless, cumulative error requiring reversal.

## II.    DISCUSSION

A.    Record Issues

1.    Transcription of the pretrial proceedings

Turner claims the court failed to maintain an adequate record of the pretrial proceedings for appeal.  Pretrial proceedings before magistrate judges in the Northern District of Oklahoma are ordinarily recorded electronically and only transcribed upon a party's request.  After filing his notice of appeal, Turner requested transcripts of his pretrial hearings.[6]  The Court Reporter prepared them and certified they were a true and accurate transcription of the proceedings.  Despite this certification, some of the transcripts were obviously incomplete.  Rather than questioning the accuracy of the transcripts with the court reporter or the district court through a post-trial motion,[7] Turner

---

[6] Turner is represented by a new attorney on appeal.

[7] There are multiple ways Turner could have requested the record be reviewed before or after it was compiled.  For example, Rule 10(c) of the Federal Rules of Appellate Procedure states: "If the transcript of a hearing or trial is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means . . . ."  This statement is then provided to the appellee for comment or objection, submitted to the district court for approval, and included in the record on appeal.  Similarly, Rule 10(e)(1) states: "If any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly."  Turner did not prepare a statement of the evidence to include in the appellate record nor did he file an objection to the record or a motion to correct the record with this Court or the district court.

filed his brief in this Court alleging the court reporter's certification of faulty transcripts violated the Court Reporter's Act and the deficient transcripts failed to provide an adequate record from which to appeal. He does not explain how pretrial errors, if any, survive a guilty verdict in an error-free trial.

After Turner made these allegations – and at the government's request — the court reporter compared the electronic recordings to the original transcripts and found that three electronic recordings contained significantly more dialogue than originally transcribed. The court reporter certified amended transcripts. The government then filed, and we granted, a motion to supplement the record with the amended transcripts. Turner continues to allege the original transcription problems cast doubt on the reliability of the supplemental amended transcripts. His argument is specious.

The Tenth Circuit Rules of Appellate Procedure place the duty to provide transcripts which "give the court a complete and accurate record of the proceedings" upon the Appellant. 10th Cir. R. 10.1(A)(1). "A party who seeks to reverse the decision of a district court must provide an adequate record for this court to determine that error was committed." *Travelers Indem. Co. v. Accurate Autobody, Inc.,* 340 F.3d 1118, 1119 (10th Cir. 2003). Turner does not challenge the existence of the electronic recordings, nor does he offer evidence to show the supplemental transcripts vary from the electronic recordings (much less that they lack in substance).[8] Rather, Turner asserts the supplemental transcription raises more questions about the accuracy of what occurred and

---

[8] Neither party sought to have the record supplemented with the electronic recordings.

- 7 -

whether other potentially unrecorded (or improperly transcribed) proceedings prejudiced his rights.[9] His speculations do not show that the record and supplemental record fail to accurately detail the pretrial proceedings at which Turner alleges the magistrate judge violated his rights.

> 2.      Court Reporter's Act – 28 U.S.C. § 753(b)

The Court Reporter's Act requires all criminal proceedings held in open court be recorded verbatim by shorthand, mechanical or electronic means. 28 U.S.C. § 753(b). The Act also explains the process by which written transcripts shall be certified: "The transcript in any case certified by the reporter . . . shall be deemed prima facie a correct statement of the testimony taken and proceedings had. No transcripts . . . shall be considered as official except those made from the records certified by the reporter." *Id.* The Act's requirements are mandatory; no request to enforce them is required of the defendant. *Edwards v. United States*, 374 F.2d 24, 26 n.2 (10th Cir. 1966).

The original certified transcripts were incomplete. The transcripts for the March 26 and April 5 hearings each contained less than one page of dialogue and the transcript for May 30 included only a portion of the hearing and referred to conversations not included in the transcript. Because these transcripts did not encompass a verbatim recording of the proceedings, there is no doubt the court reporter erred in certifying them. This was a violation of the Court Reporter's Act. Although a serious violation, it does

---

[9] Turner does not identify any specific prejudice or substantial right allegedly placed in jeopardy, but only asserts "serious questions of what else is missing and what else may be present that doesn't belong" and demands complete reversal. (Appellant's Reply. Br. at 16.)

not compel reversal of Turner's conviction.

A violation of the Court Reporter's Act is not per se prejudicial error; an appellant must show prejudice before we will reverse his conviction due to non-compliance. *United States v. Haber,* 251 F.3d 881, 889-90 (10th Cir. 2001).  Such non-compliance is reversible error only "when the unavailability of a transcript makes it impossible for the appellate court to determine whether or not prejudicial error was committed with regard to a challenged action."  *Id.* at 889 (quotations omitted).

Turner asserts a generalized objection to the "many seriously disturbing questions that call into doubt the integrity of the district court's record-keeping system . . ." and challenges the reliability of the court's recordkeeping as a whole.  (Appellant's Reply Br. at 9.)  He points to the original transcript of the March 26 hearing that referred to waiver forms not included in the record and argues a possible missing waiver form makes it impossible to know for certain whether prejudicial error occurred.  However, counsel has not identified a waiver sought to be enforced against Turner, nor any alleged prejudice Turner has suffered.  There can be no prejudice in an unenforced waiver of Turner's rights, if there even was a waiver.

While the deficiencies in the transcripts were error, Turner's unsupported allegations of prejudice are uncompelling.  Turner had the opportunity to question the accuracy of the transcripts with the court reporter, file a post-trial motion with the district court, or even utilize the various procedures set forth in Rule 10 of the Federal Rules of

Appellate Procedure in an attempt to correct the record.[10] Turner's attorney admitted he made absolutely no inquiry into the transcripts' accuracy except to ask his client, who could not remember the proceedings. The problems with the initial transcripts were identified and corrected in a straightforward fashion through a review of the electronic recordings and supplementation of the record.

After a full review of the record we are satisfied the amended transcripts provide an adequate basis for us to determine if any error by the magistrate judge was prejudicial to Turner's substantial rights. Any hardship Turner may have faced because of the court reporter's initial errors and his own failure to inquire about the sufficiency of the transcripts did not affect his substantial rights. The court reporter's error in certifying the initial transcripts does not entitle Turner to reversal.

B.      Pretrial Insufficiencies

Turner alleges three pretrial insufficiencies for the first time on appeal. Specifically, he alleges the district court violated Rules 5 and 10 of the Federal Rules of Criminal Procedure – which set forth pretrial procedure - and the Bail Reform Act by not issuing written findings and a statement of reasons. We review each for plain error because the issues were not raised before the district court. *United States v. Vonn*, 535 U.S. 55, 66 (2002) ("A defendant's right to review of error he let pass in silence depends

---

[10] While Turner has the right to rely upon the court reporter's certification of the transcripts, a cursory review of them would have caused any attorney to question their accuracy. He should have, as a matter of common sense, asked the court reporter directly or filed a post-trial motion with the district court, allowing it an opportunity to consider alleged errors and any attending prejudice.

upon the plain error rule."); *see also United States v. Lalonde*, 509 F.3d 750, 757 (10th Cir. 2007) ("We review violations of the Federal Rules of Criminal Procedure for plain error if the defendant fails to object before the district court."). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects the defendant's substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Taylor,* 514 F.3d 1092, 1100 (10th Cir. 2008). "[F]or a defendant seeking reversal of his conviction, plain error review requires a heightened showing of prejudice." *Lalonde*, 509 F.3d at 759. The defendant bears the burden of proof on plain error review. *Vonn*, 535 U.S. at 62-63.

1.      Rules 5(d) and 10(a) of the Federal Rules of Criminal Procedure

Rules 5(d) and 10(a) of the Federal Rules of Criminal Procedure set forth procedural requirements for initial appearances and arraignments. Turner alleges the magistrate judge failed to abide by these rules. The transcripts confirm the magistrate judge erred in some respects. In other respects, the record is clear no error occurred. Rule 5(d)(1) provides:

> [T]he judge must inform the defendant of the following:
>
> (A) the complaint against the defendant, and any affidavit filed with it;
>
> (B) the defendant's right to retain counsel or to request that counsel be appointed if the defendant cannot obtain counsel;
>
> (C) the circumstances, if any, under which the defendant may secure pretrial release;
>
> (D) any right to a preliminary hearing; and
>
> (E) the defendant's right not to make a statement, and that any statement made may be used against the defendant.

The record shows no violation of Rule 5(d)(1)(A)-(B) occurred. The transcripts from March 26 and April 3 indicate the magistrate judge provided Turner a copy of the indictment against him, made certain he understood the charges, and assured he was (or would be) represented by the counsel of his choice. However, the transcripts do show the magistrate judge failed to inform Turner of some of his rights under Rule 5(d)(1)(C)-(E), *i.e.*, he failed to advise Turner of the circumstances under which he could obtain pretrial release, his right not to make a statement and the consequences of making a statement. Rule 5 provides no discretion on these requirements. In relation to these requirements, the magistrate judge erred.[11]

While there were errors and they were plain, Turner makes no cogent argument as to how they affected his substantial rights and we detect none from our review. He was represented by competent counsel at all times. While he was never informed by the court of his ability to obtain pretrial release, the magistrate judge held a detention hearing where Turner's attorney presented a witness and cross-examined another. Finally, Turner was not informed of his right to remain silent or the ability of the government to use his statements against him. But there is no argument he made a prejudicial statement or that the government has ever attempted to use any of his statements against him. We discern no prejudice to Turner's substantial rights through these errors.

Rule 10(a) requires:

---

[11] In his litany of technical complaints, Turner includes not being advised of his right to a preliminary hearing. He has no such right as he was indicted before his initial appearance. *United States v. Brooks*, 569 F.3d 1284, 1290 (10th Cir.), *cert. denied*, 130 S. Ct. 234 (2009). Strict compliance with Rule 5 does not require notifying a defendant of non-existent rights.

An arraignment must be conducted in open court and must consist of:

**(1)** ensuring that the defendant has a copy of the indictment or information;

**(2)** reading the indictment or information to the defendant or stating to the defendant the substance of the charge; and then

**(3)** asking the defendant to plead to the indictment or information.

The record is clear the requirements of Rule 10(a)(1) and (a)(3) were satisfied. Turner indicated he was given a copy of the indictment and stated he had read it and understood the charges against him on both March 26 and April 3. He then, while represented by retained counsel, pled not guilty to all counts.

The requirement of Rule 10(a)(2) was not met – the magistrate judge failed to read the indictment or a summary of the charges to Turner prior to his entering a plea. Regardless, Turner makes no argument this failure to read the indictment aloud was prejudicial. He said he understood the charges, pled not guilty, and went to trial on all charges. There was no mistaken or ill-informed waiver of the right to a trial or even improper entry of a plea. We have held a failure to satisfy Rule 10 meets the first two prongs of the plain error test but no more. *See Lalonde*, 509 F.3d at 758. This case is no different. While the magistrate judge plainly erred in not reading the indictment aloud, there was no prejudice to Turner's substantial rights in failing to do so.

2.    Bail Reform Act (18 U.S.C. § 3142)

The Bail Reform Act requires "written findings of fact and a written statement of the reasons for detention" after a hearing determining pretrial detention. 18 U.S.C. § 3142(i)(1). The primary purpose of the written-finding requirement is to ensure the underlying reasons for a detention order are sufficiently clear to permit appellate review.

*United States v. Affleck*, 765 F.2d 944, 954 (10th Cir. 1985) (noting the statutory

requirement "comports with Fed. R. App. P. 9(b) . . . [which] requires the district court to

'state in writing [its] reasons' [to] aid[] our appellate function by requiring . . . written

findings and conclusions."); *see also United States v. Goodman*, 145 Fed. Appx. 282, 284

(10th Cir. 2005) (unpublished) ("The primary purpose of §3142(i)(1) is to ensure that the

reasons underlying a detention order are articulated with sufficient clarity to permit

appellate review.").[12]

The record demonstrates the magistrate judge discussed with clarity his reasons

for issuing a detention order; as detailed earlier, he listed a number of reasons. However,

it is undisputed the magistrate judge failed to make <u>written</u> findings of fact and a <u>written</u>

statement of reasons for detention.[13]

The magistrate's failure to issue written findings and a statement of reasons was

error and it is plain. However, the supplemental transcript shows the magistrate's oral

statements addressed the statutory factors for detention and are preserved for our review.

Additionally, Turner's subsequent conviction negated any consequence of the error -

particularly when he was given credit toward his sentence for time served prior to trial.

Turner has identified no prejudice as a result of his continued detention and reversal

---

[12] Unpublished opinions are not binding precedent. 10th Cir. R. 32.1(A). We mention *Goodman* as we would an opinion from another circuit, persuasive because of its reasoned analysis.

[13] Turner did not object to these findings and reasons or to the absence of a written order at the time. Neither did Turner exercise his right to appeal the detention order to a district judge, who has the authority to reconsider it. *See* 18 U.S.C. § 3145(b); *see also United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

would not restore the benefits a timely written order would have provided. *See United States v. Montalvo-Murillo*, 495 U.S. 711, 721 (1990).

3.  Sixth Amendment Right to Counsel

Turner also claims the magistrate judge erred by failing to hold a hearing on his request to substitute counsel or allow self-representation.[14] A decision regarding substitution or discharge of counsel is reviewed for abuse of discretion. *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002). We have explained the showing necessary for the substitution of one's counsel:

> [T]he defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict. Good cause for substitution of counsel consists of more than a mere strategic disagreement between a defendant and his attorney. [R]ather, there must be a total breakdown in communications. To prove a total breakdown in communication, a defendant must put forth evidence of a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible.
>
> Our cases instruct us in making this assessment to look at whether (1) the defendant's request was timely; (2) the trial court adequately inquired into defendant's reasons for making the request; (3) the defendant-attorney conflict was so great that it led to a total lack of communications precluding an adequate defense; and (4) the defendant substantially and unreasonably contributed to the communication breakdown.

*United States v. Porter*, 405 F.3d 1136, 1140 (10th Cir. 2005) (citations and quotations omitted).

---

[14] The only reference to this issue in the record is found in the transcript of the May 30, 2008 hearing where Turner's counsel told the magistrate, "Mr. Turner again advises that he wishes to seek other counsel." (R. Supp. Vol. II at 6.) Because Turner never requested to represent himself, we do not consider the self-representation claim. *See Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992) (we will generally not consider an issue on appeal not raised below).

Ultimately, "[a] defendant's right to obtain counsel of his choice must be balanced against the need for the efficient and effective administration of criminal justice. *United States v. Weninger*, 624 F.2d 163, 166 (10th Cir. 1980). While courts should inquire into a defendant's reasons for seeking substitution of counsel, failure to do so "is harmless where the defendant otherwise stated his reasons for dissatisfaction." *United States v. Padilla*, 819 F.2d 952, 956 n.1 (10th Cir. 1987). "[I]f the reasons proffered are insubstantial and the defendant receives competent representation from counsel, a court's failure to inquire sufficiently or to inquire at all constitutes harmless error." *United States v. Doe #1*, 272 F.3d 116, 123 (10th Cir. 2001).

Turner informed the magistrate judge of his desire to substitute counsel at the May 30, 2007 pretrial hearing, three business days before the start of trial. While the magistrate judge did not hold a separate hearing, he asked Turner to explain his dissatisfaction. Turner said:

> Well, we did talk, like, last week when I came to court about the plea and everything but everything still wasn't explained to me, the guidelines weren't gone over with me. I mean, I still wasn't sure about what I wanted to do. I didn't get a visit from my lawyer until Tuesday which I thought was my court date.
>
> So it was, like --- I just feel like he's not really working for me and I feel like --- I mean, I feel like we've lost already. He's not really --- I don't feel like he's fighting for me at all. So therefore I don't think it would be right to represent me as my lawyer.

(R. Supp. Vol. II at 6.)

None of Turner's concerns indicated a complete breakdown in communication that would preclude an adequate defense. The magistrate judge stated Turner could discuss

these concerns with his attorney prior to trial and told him to raise the issue with the trial judge. Turner never objected to these instructions or raised the issue again until this appeal.

The magistrate's failure to hold a hearing was reasonable given the generic nature of Turner's concerns, the apparent ongoing communication between Turner and his counsel, and the competent representation Turner's counsel was providing (Turner raises no claim of deficiencies in counsel's representation). The magistrate judge could have held a hearing on the matter or inquired further. However, the failure to do so was not an abuse of discretion when one considers the timing of the request, the lack of a complete breakdown in communication with his counsel, or Turner's inability to identify a valid concern with counsel's representation.

C.      Cumulative Error

Finally, Turner argues that to the extent the errors raised in this appeal are determined to be harmless, their cumulative effect rendered his proceedings before the district court fundamentally unfair. As we have explained:

> A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless. Unless an aggregate harmlessness determination can be made, collective error will mandate reversal, just as surely as will individual error that cannot be considered harmless. The harmlessness of cumulative error is determined by conducting the same inquiry as for individual error - courts look to see whether the defendant's substantial rights were affected.

*United States v. Rivera*, 900 F.2d 1462, 1470 (10th Cir. 1990). "[C]umulative-error analysis should evaluate only the effect of matters determined to be error, not the

cumulative effect of non-errors." *Id.* at 1471.

Clearly, there were technical errors: 1) the irregularities in the original transcriptions, 2) the failure to advise Turner of the circumstances under which he could obtain pretrial release, 3) his right not to make a statement, 4) the failure to read the indictment aloud in court, and 5) the magistrate's failure to issue a written order following the detention hearing. These errors were not properly preserved. Nevertheless, alone or cumulatively, they did not adversely affect Turner's rights.

**AFFIRMED**.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge