UNITED STATES *v.* VANDEGRIFT & Co. (No. 1921).[1]

"ROLLER VARNISH"—GELATIN.

A physical (not a chemical) solution of gelatin with acetic acid, water, and coloring matter, the gelatin being the component material of chief value and still possessing its natural inherent qualities, known as "Red Top roller varnish" or "roller varnish," used to dress the surfaces of leather rollers in woolen mills to keep the wool from sticking to them, is not a varnish under paragraph 58, tariff act of 1913, or a non-enumerated manufacture under paragraph 385, but a manufacture of gelatin under paragraph 34.

## United States Court of Customs Appeals, December 30, 1918.

APPEAL from Board of United States General Appraisers, Abstract 42134.

[Reversed.]

*Bert Hanson,* Assistant Attorney General (*Frank P. Wilson,* special attorney, of counsel), for the United States.

Submitted on record by appellee.

[Oral argument Oct. 30, 1918, by Mr. Hanson].

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The question here is whether an article indifferently referred to in the record as "Red Top roller varnish" or "roller varnish" is dutiable under paragraph 34 of the tariff act of 1913, which provides for "gelatin, glue and glue size" at varying rates, and for "manufactures of gelatin or manufactures of which gelatin is the component material of chief value at 25 per centum ad valorem," or under paragraph 385 as an unenumerated manufactured article.

This so-called varnish was assessed under the former paragraph as a manufacture of gelatin or a manufacture in chief value thereof.

There is a sample before us, which is a freely moving liquid. Just how it is produced there is no evidence other than the analysis hereinafter mentioned. It is designed to be applied to the surface of leather rollers used in woolen mills for the purpose of rendering the same smooth, so wool will not adhere thereto, and this appears to be its only use.

In the protest the importers claimed that the merchandise was dutiable under paragraph 58 of the act, providing for "varnishes"; that "it is not a manufacture of gelatin, as any gelatin that may be found in the merchandise can only be found by chemical analysis, and has lost its identity as gelatin"; and, further, in substance that it was dutiable under paragraph 385.

Other claims were also made, not necessary of consideration here.

In the hearing of this particular protest before the board no evidence was offered by either party other than moving into this case the testimony and record in an earlier one involving identical mer-

---

[1] T. D. 37874 (36 Treas. Dec., 22).

chandise which had been assessed under the same paragraph. Therein the importers had claimed classification as varnish under paragraph 58 either directly or by similitude, but had not invoked paragraph 385. The board had overruled the protest without affirming the action of the collector.

In the case now before us the board, in its opinion, states that in the former it overruled the protests without affirming the collector's classification, because it found the merchandise was not a varnish, not being within the ordinary meaning of that term; that there was no evidence of commercial designation or similitude and no claim made under the nonenumerated paragraph. It further states that in this case the nonenumerated paragraph being invoked, it sustains the claim and overrules all the others, and from this judgment the Government appeals.

The Government contends that the merchandise is simply gelatin in solution, and therefore a manufacture thereof; also that the mixed material provision in paragraph 386, "and on articles not enumerated manufactured of two or more materials, the duty shall be assessed at the highest rate at which the same would be chargeable if composed wholly of the component material thereof of chief value" clearly requires the assessment under paragraph 34. It cites, among other cases, Murphy *v.* Arnson (96 U. S., 131), Benson *v.* United States (4 Ct. Cust. Appls., 467; T. D. 33882), and G. A. 4295 (T. D. 20211).

We have no information as to the arguments or authorities which may be made or cited to sustain the importers' contention other than what is found in the opinion of the board in the first case, because no brief or argument has been filed or made in their behalf in this court.

The board, however, relied upon the authority of Meyer *v.* Arthur (91 U. S., 570), hereinafter referred to, in sustaining the protest.

At the outset it may be observed that the assessment of the so-called varnish by the collector prima facie establishes that it is a manufacture in chief value of gelatin, and the burden is upon the importers to show by proof that it is not such.

The only evidence upon this subject, other than that afforded by the sample itself, was furnished by a Government chemist, called by the importers. His testimony, in connection with his report upon the subject, which is made a part of the record, in substance is that he had made an analysis of the so-called varnish; that it was a solution of gelatin and a small amount of aniline color in dilute acetic acid; that it contained 27.7 per cent of gelatin, 14.7 per cent acetic acid, probably less than 1 per cent color, and the balance water; that in his practical experience or work he had never met anything which was known as a varnish which contained gelatin, except this article, and that if he had been asked to name it, after he had made

the analysis, he would have called it a liquid glue rather than a varnish.

He said that gelatin was made from hides and tendons and other cartilaginous portions and similar materials of animals; that the distinction between gelatin and glue was that the former was a wholly purified product from the same basic materials, while the latter contained in addition "exterior material."

The importers offered no evidence as to what was the component material in chief value; hence as to this particular question the finding of the collector that it is gelatin stands unimpeached, and the issue reduces to whether this article is or is not a manufacture of gelatin; that it is a manufactured article there is no dispute. The board so holds, and under the authorities there can be no doubt that it is such. The board also well finds that the article is not a varnish.

The case of Meyer v. Arthur, supra, is sound authority for the proposition that articles which were the result of a chemical union of metals and some other material, and in which, as a result of the chemical change, a given metal had lost its identity and metallic qualities and become another and different substance, such as, in that case, oxides of metals used as pigments, disinfectants, etc., were not within tariff nomenclature manufactures of metals.

The case of Murphy v. Arnson, supra, is equally sound authority for the proposition that a liquid, nitrobenzole, formed by the chemical union of other liquids, benzole and nitric acid, was a manufactured article dutiable under the mixed material clause at the highest rate imposed upon any of its component materials, the statute then providing for the assessment of such nonenumerated manufactures at the highest rate chargeable upon any of the component parts, instead of the provision now in paragraph 386 that in such case duty shall be taken at the rate chargeable upon the component material of chief value.

Therefore, if the so-called varnish here is the result of chemical action upon the gelatin, it would, within the ruling of the last-mentioned case, be a manufactured article, and unless it is otherwise provided for dutiable as provided in the mixed material part thereof. (Benson v. United States, supra.).

But as already appears there is no evidence that this varnish is the result of what may properly be termed a chemical action upon the gelatin, nor that the gelatin therein has lost its identity as such, or its inherent natural qualities, and the unimpeached finding of the collector negatives those conditions. In addition to this, the importers' witness characterizes the merchandise as gelatin in solution.

Gelatin is defined to be a transparent, hard, tasteless, animal substance which swells without solution in cold water, is soluble in hot

water, acetic acid, and some other acids, and insoluble in alcohol or ether. See Century Dictionary, also Thorpe's Dictionary of Applied Chemistry.

Of common knowledge, it is applied to a great variety of uses, and of necessity in fitting it for some of them water or acid must be used as a solvent.

Congress is presumed to know all this, and we are of opinion that in providing for manufactures of gelatin or manufactures of which gelatin is the component material of chief value, in paragraph 34, it designed to cover such an article as the one at bar.

Solutions seem to be of two classes, one that which is not accompanied by a chemical change and called a physical solution or mixture; the other, a chemical solution which is the result of chemical action. We think this so-called varnish falls within the first class.

A more complete record may establish, however, that it is in fact a chemical solution, but upon the one before us, and for the purposes of this case, we find that the gelatin here has been caused to assume its present liquid form without any chemical action whatever; that it still possesses its natural inherent qualities and has not lost its characteristics as gelatin.

That it is a physical mixture and not a chemical compound we think is corroborated by the sample now before us, because when it is spread upon a flat surface and exposed to the air for a few hours such evaporation takes place that there remains a nonfluid substance closely adhering to the surface upon which it was placed, which appears to be ordinary gelatin, although colored.

We are of opinion that the judgment of the Board of General Appraisers ought to be, and it is hereby, *reversed.*