REYNA, Circuit Judge,
dissenting.
I believe that 19 U.S.C. § 1515(a) requires Customs to act on the merits of all protests within two years, and that all protests not expressly denied within that two-year period are allowed by operation of law. Because I would find Hitachi’s protests at issue were therefore allowed but its duties were not refunded, I would reverse the Court of International Trade (“CIT”) and find that it had jurisdiction under 28 U.S.C. § 1581(i) to address Hitachi’s claims for refunds. I respectfully dissent.
I. Background
Hitachi commenced this action seeking to recover duties, plus interest, paid upon entries of plasma flat-panel televisions made in Mexico. Hitachi timely filed claims at Customs for refund of excessive duties paid pursuant to 19 U.S.C. § 1520(d), alleging that the televisions were eligible for duty-free treatment under the NAFTA rules of origin. Customs denied the claims and Hitachi filed protests with Customs under 19 U.S.C. § 1514. Ten separate protests related to the televisions were filed by Hitachi between May 16, 2005 and March 6, 2007, but after more than two years, none of the protests were either allowed or denied by Customs.
The jurisdiction of the Court of International Trade (“CIT”) is defined by 28 U.S.C. § 1581. Section 1581(a) gives the CIT exclusive jurisdiction over “any civil action commenced to contest the denial of a protest....” Section 1581(i) provides residual jurisdiction to the CIT, including jurisdiction to hear claims relating to “administration and enforcement” of protests and refunds. The central issues in this case are whether 19 U.S.C. § 1515(a) requires Customs to affirmatively act on all protests within two years, and whether all protests not expressly denied within that two year time period are allowed by operation of law. Depending upon how § 1515 is interpreted, jurisdiction may or may not exist under § 1581(a) or § 1581®. If § 1515 causes undecided protests to be deemed denied after two years, jurisdiction exists under § 1581(a) to challenge the denial, but if § 1515 causes undecided protests to be allowed by operation of law, jurisdiction exists under § 1581® to compel a refund. If § 1515 imposes no obligation on Customs to decide protests within two years, jurisdiction does not exist on either basis.
Section 1515 provides in relevant part as follows:
§ 1515. REVIEW OF PROTESTS (a) Administrative review and modification of decisions
Unless a request for an accelerated disposition of a protest is filed in accordance with subsection (b) of this section the appropriate customs officer, within two years from the date a protest was filed ..., shall review the protest and shall allow or deny such protest in whole or in part. Thereafter, any duties, charge, or exaction found to have been assessed or collected in excess shall be remitted or refunded.... Upon the request of the protesting party, ... a protest may be subject to further re *1352 view by another appropriate customs officer, under the circumstances and in the form and manner that may be prescribed by the Secretary in regulations, but subject to the two-year limitation prescribed in the first sentence of this subsection.... Notice of the denial of any protest shall be mailed in the form and manner prescribed by the Secretary. Such notice shall include a statement of the reasons for the denial, as well as a statement informing the protesting party of his right to file a civil action contesting the denial of a protest under section 1514 of this title.
(b) Request for accelerated disposition of protest
A request for accelerated disposition of a protest filed in accordance with section 1514 of this title may be mailed by certified or registered mail to the appropriate customs officer any time concurrent with or following the filing of such protest. For purposes of section 1581 of title 28, a protest which has not been allowed or denied in whole or in part within thirty days following the date of mailing by certified or registered mail of a request for accelerated disposition shall be deemed denied on the thirtieth day following mailing of such request.
(emphases added).
The CIT dismissed Hitachi’s complaint for lack of jurisdiction under either § 1581(a) or § 1581(i). Hitachi Home Elecs., Inc. v. United States, 704 F.Supp.2d 1315 (Ct. Int’l Trade 2010) (“CIT Op.”). In particular, the CIT found that § 1515(a) does not specify a consequence — either allowance or denial — for Customs’ failure to decide a protest within two years, and that therefore the statutory deadline was not mandatory. Id. at 1319. According to the CIT, § 1515(a) does not deprive Customs of the power to act on a protest after the two year period. Id. The CIT also found that § 1515(b)’s accelerated disposition procedure was and is available to Hitachi to secure a “deemed denial” of its protest and thereby jurisdiction pursuant to § 1581(a). Id. at 1320. The CIT thus held it would be inappropriate to invoke jurisdiction under § 1581® without first following the protest and denial procedures provided in § 1515(b). Id. (citing Hartford Fire Ins. Co. v. United States, 544 F.3d 1289 (Fed.Cir.2008) (“While this court has described subsection 1581® as a broad residual jurisdictional provision, we have in the same breath said that the unambiguous precedents of this court make clear that its scope is strictly limited, and that the protest procedure cannot be easily circumvented.”) (citations and internal quotation marks omitted)).
II. Discussion
This court reviews questions regarding the CIT’s jurisdiction de novo. Retamal v. U.S. Customs & Border Prot., 439 F.3d 1372, 1375 (Fed.Cir.2006). The proper interpretation of § 1515(a) is an issue of first impression for this court. This pure legal issue of statutory interpretation is also reviewed de novo. Cemex, S.A. v. United States, 384 F.3d 1314, 1319 (Fed.Cir.2004).
By its plain language § 1515(a) establishes a two-year time limit by which Customs “shall review the protest and shall allow or deny such protest in whole or in part.” Not once but twice within § 1515(a) Congress indicated that Customs’ review and decision obligations are “subject to the two-year limitation.” It is clear that Congress imposed a meaningful two-year deadline upon Customs. The real question is what happens when Customs simply fails to do what the statute says it “shall” do within that period. While the CIT found that there is simply no consequence — that Customs is free to *1353 indefinitely delay making any decision on the merits of a protest — such a construction cannot be right because it renders § 1515(a) meaningless and frustrates Congress’ intent for protest administration.
In this case, the use of the word “shall” in the statute is mandatory. Congress clearly indicated that § 1515(a) was intended to facilitate meaningful review of all protests — by Customs, not the courts— within the two year time period. Congress intended for Customs to lose the power to act after the expiration of the two year time period, and the plain meaning of the statutory language shows that if Customs failed to decide any protests within two years, those protests would be allowed by operation of law.
A. The Two-Year Deadline of § 1515(a) is Mandatory
Use of the word “shall” in a statute can indicate a mandatory compulsion which, if not followed, negates action otherwise authorized by the statute. See, e.g., Escoe v. Zerbst, 295 U.S. 490, 493, 55 S.Ct. 818, 79 L.Ed. 1566 (1935) (statute requiring that probationers “shall forthwith be taken before the court” for a hearing was a mandatory prerequisite for revocation of sentence suspension); French v. Edwards, 80 U.S. 506, 511, 13 Wall. 506, 20 L.Ed. 702 (1872) (statute authorizing judicial sales of real property required that the sheriff “shall only sell the smallest quantity that any purchaser will take, and pay the judgment and all costs” was mandatory prerequisite for valid sale).[1] This appeal presents such a statute.
Of course, the presence of the word “shall,” while a strong suggestion of mandatory meaning, is not always dispositive. Escoe, 295 U.S. at 493, 55 S.Ct. 818. The Supreme Court has found in certain cases that an agency’s failure to do within a prescribed time period what a statute says it “shall” does not cause that agency to lose the power to act after the time period expires. See, e.g., United States v. James Daniel Good Real Prop., 510 U.S. 43, 63, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (statute required that customs agents “report immediately” all seizures and violations, which shall then be “reported] promptly” to the U.S. attorney who shall “forthwith” initiate appropriate proceedings); United States v. Montalvo-Murillo, 495 U.S. 711, 714, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990) (statute required that a criminal bail hearing “shall be held immediately upon the person’s first appearance before the judicial officer”); Brock v. Pierce Cnty., 476 U.S. 253, 256, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986) (statute provided that Secretary of Labor “shall investigate” and “shall” determine the truth of any allegation of misused funds within 120 days). The majority relies on these and other such cases for the proposition that the absence of an expressly recited consequence for inaction makes a prescribed time period directory, not mandatory.
*1354 None of the cases relied upon by the majority are applicable precedent for this appeal, however. First, those cases did not construe § 1515, a statute that carries its own distinct language and policy objectives, and which this court presently interpx-ets as a matter of first impression. Second, all of those cases involved statutory time limits of a fundamentally different character than the two-year protest review period in § 1515(a). The longest time limit involved in any of the statutes in those cases was 120 days. See, e.g., James Daniel Good Real Prop., 510 U.S. at 63, 114 S.Ct. 492 (“immediately,” “promptly,” “forthwith”); Montalvo-Murillo, 495 U.S. at 714, 110 S.Ct. 2072 (“immediately”); Brock, 476 U.S. at 256, 106 S.Ct. 1834 (“120 days”). The short time limits in the respective statutes were plainly intended to “spur” the agency to take prompt action in various contexts. See Brock, 476 U.S. at 265, 106 S.Ct. 1834; see also Gilda Indus. v. United States, 622 F.3d 1358, 1363-65 (Fed.Cir.2010). Strict adherence to the statutory time periods would have frustrated a larger policy objective by taking away the agency’s power to act under the same statute that plainly encourages the agency to take action. See, e.g., James Daniel Good Real Prop., 510 U.S. at 65, 114 S.Ct. 492 (“It would make little sense to iixterpret directives designed to ensure the expeditious collection of revenues in a way that renders the Government unable, in certain circumstances, to obtain its revenues at all.”); Montalvo-Murillo, 495 U.S. at 720, 110 S.Ct. 2072 (“[Tjhere is no reason to bestow upon the defendant a windfall and to visit upon the Government and the citizens a severe penalty by mandating release of possibly dangerous defendants every time some deviation from the strictures of § 3142(f) occurs.”); Brock, 476 U.S. at 265, 106 S.Ct. 1834 (“It would be very odd if Congress had implemented that intent by cutting off the Secretary’s authority to correct abuses just 120 days after learning of them.”).
Section 1515(a), by contrast, involves a time period of two whole years for Customs to complete its substantive review of protests. This period is immensely longer than those in the cases relied upon by the majority, and is more like a statute of limitations than a provision to spur Customs to quick action.[2] As explained below, at the time of § 1515’s enactment 90 days was believed to be sufficient for nearly all protests to be fully reviewed and decided. The two-year period was intended to facilitate meaningful administrative review of protests by ensuring that action, prompt or otherwise, is absolutely taken by Customs within two years. Given this legislative purpose for § 1515(a), the word “shall” must be read as mandatory, and to remove Customs’ power to act after two years. To the extent this result may be characterized as a “coercive sanction,” James Daniel Good Real Prop., 510 U.S. at 63, 114 S.Ct. 492, such was Congress’ intended design for Customs’ protest review procedures.
1. Congress Intended for Customs to Lose the Power to Act on Protests After Two Years
The background and legislative history of § 1515 demonstrates the strict and *1355 mandatory nature of the two-year time period for protest review and disposition.
a. Pre-1970 Protest Legislation and Customs Practice
Prior to 1970, § 1515 provided that Customs had ninety days to review protests. See 19 U.S.C. § 1515 (1965); Tariff Act of 1930, Pub. L. No. 71-361, § 515, 46 Stat. 590, 734. Any denied protests were automatically transferred to the United States Customs Court for review. Id. Protests that were undecided after 90 days were treated as denied, Customs lost jurisdiction over those protests, and those protests were likewise automatically transferred to the Customs Court for review. H.K. Wheeler, Inc. v. United States, 9 Cust.Ct. 30, 33-34 (1942). Data provided by Customs to Congress around 1970 showed that “all protests were processed in an average period of 58 days from the date of receipt, and more than 97 percent were fully processed within 90 days of the date of their receipt.” S.Rep. No. 91-576, at 28 (1969). A small but significant portion of protests were undecided after the statutory 90 day limit.
The automatic transfer process resulted in “thousands” of cases being filed at the Customs Court resulting in the creation of “plaintiffs” that often never intended to initiate or prosecute such actions. S.Rep. No. 91-576, at 29. Congress identified the automatic referral practice as one of the “major defects” in the pre-1970 protest law. Id. at 10. The administrative burden caused by this practice was substantial and unnecessary. See id. (“[Elimination [of automatically referred] cases will be a great service to the Customs Bureau and the Customs Court....”). As shown below, the CIT’s and majority’s decision operates to encourage de facto transfers of undecided protests to the CIT for review, a practice which was rejected and remedied by Congress.
b. The Customs Courts Act of 1970
As originally proposed, § 1515(a) imposed no time limit on Customs’ review of protests and permitted but did not obligate Customs to dispose of protests: “The appropriate customs officer shall review a protest filed in accordance with section 514 of this Act and may allow or deny such protest in whole or in part.” S. 2624, 91st Cong. § 208 (1969) (emphasis added). The Senate Bill also included § 1515(c) which provided for a “constructive denial” of all protests that were undecided after two years. Id. (“Any protest which has not been allowed or denied in whole or in part in accordance with paragraph (a) of this section ... shall be deemed denied after two years have elapsed from the date the protest was filed....”). Thus, as under the pre-1970 law, in the original bill there was no requirement that Customs decide protests, and any undecided protests after a certain time period were deemed denied. While Congress may have initially contemplated a non-mandatory and temporally unbounded protest adjudication process, the bill was quickly amended to reject such a statutory scheme.
The Senate Committee on the Judiciary amended the language of § 1515(a) to impose a two-year time limit, and changed “may allow or deny” to “shall allow or deny”:
[T]he appropriate customs officer, within two years from the date a protest was filed in accordance with section 514 of this Act, shall review the protest and shall allow or deny such protest in whole or in part.
S.Rep. No. 91-576, at 2-3 (emphases added). The Committee also deleted subsection (c)’s “constructive denial” provisions. Id. at 3. The Senate Committee Report *1356 explained that these revisions were intended to impose “an obligation on the Bureau of Customs to act on the merits of all protests within 2 years.” Id. at 30 (emphasis added). Customs was to be given a two-year time period in which to review and dispose of protests, and not a day more. Id. at 11 (“An overall limit of two years will be set in which the Bureau of Customs must dispose of a protest on its merits”); id. at 28 (“New section 515(a) provides a maximum period of 2 years from the date of filing of a protest for administrative review.”) (emphases added); see also H. Rep. No. 91-1067, at 28 (1970) (discussing “maximum period of 2 years” which “afford[s] a maximum opportunity for meaningful administrative review”).
The two-year time period was believed to be more than adequate for Customs to fully review and dispose of all protests on the merits. Based on Customs’ representations that nearly all protests were reviewed and decided within 90 days, the Senate Committee expressly stated that although the new § 1515(a) substantially extends the time period for review to two years,
[i]t is not contemplated, however, that any significant number of protests will require the entire 2-year period for review. The Treasury Department has assured your Committee that it expects to continue its processing of protests in substantially the same time period that have been required under existing law.
S.Rep. No. 91-576, at 28; H. Rep. No. 91-1067, at 28. The plain and stated purpose of giving Customs a two-year review period — eight times longer than was typically needed — was to achieve “meaningful” review and disposition of protests by Customs rather than continue the process of sending undecided or “deemed denied” cases to the courts for judicial review. S.Rep. No. 91-576, at 27 (“This [existing 90-day] time limit is substantially increased [to two years] to afford a maximum opportunity for meaningful administrative review.”); H. Rep. No. 91-1067, at 28 (stating same). These kinds of clear statements from committee reports are “highly persuasive” evidence of Congressional intent. Bingham & Taylor Div., Va. Indus. v. United States, 815 F.2d 1482, 1485 (Fed.Cir.1987). While there is ample evidence that Congress intended for Customs to complete its review of protests in no more than two years, there is nothing in the legislative history suggesting that Congress intended for review of protests to potentially go on forever.
Strict enforcement of the two-year deadline of § 1515(a) facilitates, not frustrates, Congress’ intended design for protest procedures. Congress recognized that the public interest would be best served by having Customs perform a meaningful review of protests and to dispose of all protests on their merits, all within a time period perceived to be reasonable and feasible. The 90-day period under the pre-1970 law was insufficiently short, and led to the courts being overburdened by masses of automatic appeals being filed. Thus, the time limit was substantially enlarged beyond what was perceived as necessary, the intention being that in no event would Customs need or be permitted to exceed that limit.
B. § 1515(a) Provides that Absent Action Within Two Years, Protests are Allowed by Operation of Law
Having established that it is mandatory for Customs to meaningfully review all protests within the two-year time frame of § 1515(a), I turn now to the issue of the consequence for non-compliance. While the majority finds there is no consequence in the statute, I find that the consequence *1357 is clearly stated therein. The action mandated by the statute is that Customs review protests within two years, and the plain language of § 1515(a) specifies that one of two consequences must occur by the two-year deadline as a result of that action: the protest is either “allow[ed]” or “den[ied],” and any denial must be made express with a mailed notice stating the reasons for the denial. § 1515(a). The statute does not provide for any other alternative outcomes. It is undisputed that there has been no denial of Hitachi’s protests in this case. Under the plain language of § 1515(a), there is a consequence for Customs’ inaction — Hitachi’s protests have been allowed and the protested duties must be refunded.[3]
Congress’ use of the word “allow” further indicates that § 1515(a) provides for protests to be deemed decided in a protestante favor in the event that Customs fails to deny the protest. Each word in a statute is to be interpreted according to its ordinary, contemporary, and common meaning. Williams v. Taylor, 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000); see also Strategic Hous. Fin. Corp. v. United States, 608 F.3d 1317, 1323 (Fed.Cir.2010) (“The best evidence of congressional intent is the plain meaning of the statutory language at the time Congress enacted the statute.”). When Congress enacted § 1515, “allow” meant to permit by inaction. See Random House Dictionary of the English Language (1967) (defining “allow” as “to permit by neglect, oversight, or the like.” “Allow implies complete absence of attempt, or even an intent, to hinder.”); The American Heritage Dictionary of the English Language (1969) (“Allow implies refraining from any hindrance, whereas permit suggests authoritative consent. Inherent in both is the authority to act.”); Webster’s Seventh New Collegiate Dictionary (1967) (“allow” means “to neglect to restrain or prevent”).[4] *1358 The fact that § 1515(a) requires the refund of money “found to have been assessed or collected in excess” does not detract from the passive nature of the allowance itself, but only indicates that an allowance — express or implied by law — is tantamount to a finding of entitlement that triggers Customs’ refund obligations.[5]
The legislative history of § 1515(a) also demonstrates that Congress intended protests to be allowed without any action by Customs such as the action it required for denied protests. Congress heard testimony arguing that an allowance should be reflected by a notification because such notification would immediately enable importers to “then file subsequent entries at the correct value or rate.” Hearings Before Subcommittee No. 3 of the Committee on the Judiciary, House of Representatives, 91st Cong. 144-45 (1970) (statement of Gerald H. O’Brien, executive vice president, American Importers Association). Indeed, this is the only value of a notice for an allowed protest. A notice of denial serves the same informative purpose but more importantly forms the basis for appeal, whereas nobody appeals an allowed protest. Congress ultimately declined to amend the bill and provide for any allowanee notification. The Committee Reports explained that “no useful purpose would be served by imposing on customs the burden of mailing separate notices of allowance” since “protest allowances are reflected in the notices of reliquidation and in refund payments.” S.Rep. No. 91-576, at 30; H. Rep. No. 91-1067, at 29-30 (1970). Congress’ decision not to mandate allowance notices further reflects its intent that refunds be issued without any further hindrances, i.e., that protested duties be passively “allowed” to be refunded.
1. The Accelerated Disposition Procedure
The CIT and the majority concluded that § 1515(b), the “accelerated disposition” provision, shows that § 1515(a) includes no consequence for Customs’ inaction. Section 1515(b) allows a protestant to file a request for accelerated disposition, and any “protest which has not been allowed or denied in whole or in part within thirty days [of the request] ... shall be deemed denied.” Although section 1515(a) does not include similar “shall be deemed allowed” language, it nevertheless specifies a consequence for inaction as explained above. Consequential language can take *1359 many forms, and need not mimic the style of § 1515(b).
In any event, the relevance of § 1515(b) to the interpretation of § 1515(a) is questionable since section 1515(b) serves a fundamentally different purpose than § 1515(a). Congress characterized § 1515(b) as a reasonable assurances provision, noting that “[i]mporters concerned about unreasonable delay at the administrative level are fully protected by the new provision in section 515(b) for obtaining accelerated disposition of a protest.” S.Rep. No. 91-576, at 28. Unlike § 1515(a), § 1515(b) does not impose upon Customs any obligation to affirmatively act on a protest. Hence § 1515(b) is no substitute for actual meaningful administrative review, and its primary purpose is to provide an expedited avenue for judicial review of the denial. S.Rep. No. 91-576, at 29 (“If no final action is taken by the Bureau of Customs within 30 days ... the protesting party will be free to file a summons in the Customs Court with respect to the protested issues.”); H. Rep. No. 91-1067, at 29 (stating same).
Furthermore, I disagree with the CIT’s and majority’s determination that § 1515(b) exists as an escape valve for Customs’ inaction under § 1515(a). Whereas Hitachi seeks meaningful review and disposition by Customs pursuant to § 1515(a), the CIT and the majority simply direct Hitachi to § 1515(b) to secure jurisdiction to challenge a deemed denial in court. However, this kind of de facto transfer to the courts should not be encouraged, as it is one of the precisely identified “major defects” in the pre-1970 law that Congress sought to remedy when it enacted § 1515. S.Rep. No. 91-576, at 10.
Regardless of the propriety of encouraging parties generally to seek a deemed denial, for Hitachi the accelerated disposition procedure is no longer available. The statutory text makes clear that no protests may be undecided after two years. The legislative history confirms that the two-year period was absolute even for the most complicated kinds of protests:
[Sometimes further review] may resolve an issue that would otherwise require litigation, e.g., where [the importer] indicates that the treatment of the protested entry is not uniform and consistent with the treatment of the same merchandise elsewhere in the Untied States, or where [the importer] can show that a novel issue is raised with respect to which the Bureau does not have a fixed position and which is not already under higher level review. Such further review is also expected to consume more time than the average period required to review a protest under existing law. The two-year provision will, of course, apply to protests under such review.
S.Rep. No. 91-576, at 28-29 (emphasis added); H. Rep. No. 91-1067, at 29 (stating same).
Hitachi’s protests are of the type Congress contemplated as complex and requiring careful analysis, and which might require the “entire 2-year period for review.” See S.Rep. No. 91-576, at 28. According to Customs, however, “[g]iven the number of entries, the complexity of the substantive issues, and the fact that another importer [Samsung International, Inc.] filed protests presenting similar issues, Customs was unable to take action on Hitachi’s lead protest and application for further review within the two-year time period of § 1515(a).... ” Customs’ Br. at 6. Granted, Hitachi’s and Samsung’s many protests all involved multiple entries of essentially the same kinds of flat-panel plasma televisions from various producers in Mexico, and required a careful and thorough analysis of the operation of the *1360 NAFTA rules of origin, but this is no excuse for Customs’ inaction in the face of a statute that imposes a mandatory two-year deadline. Like Hitachi’s protests in this case, Samsung’s protests were also pending for more than two years, and Samsung challenged Customs’ inaction in the CIT. Samsung later voluntarily dismissed its pending CIT actions without prejudice and filed a request for accelerated disposition, obtained a deemed denial, and refiled at the CIT having supposedly secured jurisdiction under 28 U.S.C. § 1581(a). Under the proper reading of § 1515(a), however, Samsung could not have received accelerated disposition (and a deemed denial) when it did because the protests would have been, by operation of law, already allowed. By contrast, Hitachi correctly insists that review and disposition of its protests under § 1515(a) has concluded, and properly recognizes that it can no longer avail itself of the accelerated disposition procedure.
Since only about three percent of protests took longer than 90 days to be decided by Customs in 1970, as originally enacted accelerated disposition under § 1515(b) was not even available until 90 days after the protest was filed. S.Rep. No. 91-576, at 29. In the unlikely event that protests took longer than 90 days to be reviewed and decided, a protestant eager for judicial review could “accelerate” the disposition process to obtain a final denial sooner than two years, but in no event could the protestant obtain any relief after the two-year deadline expired. The majority emphasizes that § 1515(b) allows for such accelerated disposition requests to be initiated at “any time concurrent with or following the filing of such protest,” and argues that this language shows that the procedure is available even after two years. Given the history of § 1515(b) and the two-year limitation of § 1515(a), however, this language is better understood as indicating that protestants need no longer wait for 90 days after the protest was filed to request accelerated disposition. Because more than two years’ time has elapsed, the accelerated disposition procedure is no longer available to Hitachi to secure jurisdiction under § 1581(a).
III. Conclusion
Hitachi’s protests have been allowed by operation of law, and the CIT has jurisdiction under § 1581(i). Allowing customs to indefinitely delay deciding protests forces importers to either: (a) wait until Customs eventually makes a decision on the merits of the protest, resulting in unreasonably extended periods of financial and legal uncertainty for the importer and the trade community; or (b) file a request for accelerated disposition to merely secure jurisdiction for judicial review, and proceed to court on a record not fully developed before Customs. Such a dilemma was intended to be avoided by § 1515, and in particular by automatically allowing protests that were still undecided upon the two-year deadline.
The plain meaning of the statute and the legislative history do not support the CIT’s and the majority’s decisions encouraging protestants to abandon hope for relief from Customs under § 1515(a), and instead to seek a deemed denial under § 1515(b) to get to court. As this is a case of first impression, the majority opinion in essence rewrites the statute by changing the word “shall” to “may” and eliminating any reference to a two-year deadline. This is a course I cannot follow. Congress intended for Customs to meaningfully review and decide all protests within two years so that the courts would not be needlessly burdened, so that the trading community could benefit from Customs’ well-reasoned rulings in complex cases. Ultimately, if Customs for whatever rea *1361 son is unable to comply with the two-year time limit under § 1515(a), then Congress, not this court, is the proper forum for Customs to appeal. Congress provided for a two-year maximum review period, and this court cannot rewrite the statute because Customs’ circumstances may have changed since 1970.

. The Supreme Court often finds that the word “shaH” removes all discretion to satisfy the statutory obligations. See, e.g., Nat’l Ass’n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 661, 669, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007) (statute providing that the EPA "shall approve” a transfer application under certain circumstances was "mandatory”); Lopez v. Davis, 531 U.S. 230, 241, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001) (contrasting "may” and "shall” clauses within a statute, and finding that "Congress used 'shall' to impose discretionless obligations, including the obligation to provide drug treatment when funds are available”); Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 36-37, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998) (statute providing that transferred actions "shall be remanded by the panel at or before the conclusion of such pretrial proceedings” places an "obligation” on the panel to remand accordingly, "and no exercise in rulemaking can read that obligation out of the statute”).

. The majority correctly points out that the cases “do not establish that long time limits are mandatory and short time limits are directory.’’ Maj. Op. at 1347 n. 1. The shorter time periods in those cases are not so much a “coincidence” as a result of the common policy objective that underlie the statutes — spurring the agencies to take quick action. Id. It is the different policy objective behind § 1515(a) that primarily distinguishes this appeal from those cases, but the drastically different time periods alone are nevertheless indicative of the divergent purposes of the statutes.

. The majority suggests that this conclusion is "predicated on an unstated and false premise that Congress had only two choices — automatic denial and automatic allowance — and that if Congress rejected one, it necessarily adopted the other.” Maj. Op. at 1350 n. 2. This dissent neither makes nor implies any such argument. Regardless of how many choices were available to Congress, the language of § 1515(a) is clear on its face, stating that all protests are allowed if not expressly denied within two years. That much cannot be more clearly stated. The issue on appeal is whether § 1515(a) as a whole is mandatory or merely aspirational. The majority finds it to be aspirational, resulting in indefinite indecision — an outcome unacceptable to Congress according to the legislative history.

. Other Customs regulations also use the word "allow” in the context of a passive permission of activity. See 19 C.F.R. § 19.30 (provision entitled "Domestic wheat not to be allowed in bonded space” commands that "[t]he presence ... shall not be permitted”); 19 C.F.R. § 212.06 (provision entitled "Allowable fees and expenses” sets forth pre-authorized scope of fees and expenses that may be awarded to a prevailing party before the ITC). By contrast, the active word “approve” is used in the regulations to indicate affirmative authorization on the part of Customs. See, e.g., 19 C.F.R. § 112.13 (“The port director shall approve an application for authorization as carriers of bonded merchandise and the bond filed, authorizing the applicant to act as a carrier of bonded merchandise....”); 19 C.F.R. § 114.12 ("The Commissioner may suspend or revoke the approval previously given to any issuing association....”). This shows a clear understanding, at least within Customs, of the difference between passive allowance and active approval.
Furthermore, this court’s precedent is replete with opinions consistently using the word "allow” in accordance with its ordinary meaning of permitting by inaction. See, e.g., Norsk Hydro Can., Inc. v. United States, 472 F.3d 1347, 1362 n. 25 (Fed.Cir.2006) ("Customs nonetheless ignores this order and allows liquidation to occur at an incorrect rate.”); Save Domestic Oil, Inc. v. United States, 357 F.3d 1278, 1287 (Fed.Cir.2004) ("This would allow petitioners to skew the results.... ”); Superior Fireplace Co. v. Majes *1358 tic Prods. Co., 270 F.3d 1358, 1380 (Fed.Cir.2001) ("[I]t strikes us as an illogical result to allow the patent holder ... to sue an alleged infringer for activities that occurred before the issuance of the certificate of correction.”). At least one other court has had occasion to expressly define "allow” and concluded that the word has a clearly passive meaning. Erickson v. Wis. Dep’t of Corr., No. 04-C-265-C, 2004 WL 2309045, at *5, 2004 U.S. Dist. LEXIS 20770, at *15 (W.D.Wis. Sept. 29, 2004) ("The word [allow] implies passivity, as when a person lets something occur without acting to make it occur. By using the word 'allow,' plaintiff's amended complaint can fairly be read to suggest that the individual defendants took no affirmative steps that placed plaintiff in danger.”) (citations omitted).

. Customs argues that "[i]t is difficult to envision that Congress would have intended such a negative impact on revenue (i.e., providing for the deemed allowance of a protest after two-years) without clearly setting forth such a consequence in the statute.” Customs' Br. at 23. However, as explained herein, Congress' use of the word "allow” specifies the consequence for such inaction. Further, the state of affairs of Customs at the time of § 1515's enactment was such that nearly all protests were decided within 90 days, and so there was no perceived "negative impact on revenue” when Congress provided for allowance to occur by operation of law after two years. See supra. Customs’ arguments made today to the contrary are best directed to Congress and not this court.